UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| RUBY LAMBERT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NAVY FEDERAL CREDIT UNION,<br><br>Defendant. | Civil Action No. 1:19-cv-103 |

## CLASS ACTION COMPLAINT

Plaintiff Ruby Lambert ("Ms. Lambert" or "Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint ("Complaint") against Defendant Navy Federal Credit Union ("NFCU" or the "Credit Union"), and based upon personal knowledge with respect to herself, and on information and belief and the investigation of counsel as to all other matters, in support thereof alleges as follows:

### INTRODUCTION

1. This case concerns NFCU's unlawful business practice of imposing multiple Non-Sufficient Funds Fees ("NSF Fees") on the same transaction.

2. Plaintiff brings this action on behalf of herself and all similarly situated consumers against NFCU, arising from a specific fee generation practice that violates the Credit Union's contracts and/or is deceptive.

3. Three NFCU documents permit the Credit Union to charge a single $29 NSF Fee when it determines a customer's account contains insufficient funds to pay a transaction and it rejects the charge. *See* Navy Federal Credit Union Important Disclosures ("Deposit Agreement"),

attached hereto as **Exhibit A**, Schedule of Fees and Charges attached hereto as **Exhibit B**, and Authorized User for Navy Federal Online Banking Application and Consent ("Online Banking Agreement") attached hereto as **Exhibit C** (collectively "Account Documents").

4. Through the imposition of NSF Fees, NFCU makes tens of millions of dollars annually often at the expense of its most vulnerable customers. In doing so, NFCU violates its Code of Ethics, which requires it to "act with the highest degree of integrity, which requires being honest and candid." *See https://www.navyfederal.org/about/code-of-ethics.php* (last visited on January 23, 2019).

5. Ms. Lambert does not dispute the Credit Union's right to reject a transaction and charge a *single* NSF Fee, but NFCU unlawfully maximizes its already profitable NSF Fees with deceptive practices that also violate the express terms of its contract.

6. Specifically, NFCU unlawfully assesses *multiple* NSF Fees on a single Automated Clearing House (ACH) transaction or check.

7. Unbeknownst to consumers, each time NFCU reprocesses an ACH transaction or check for payment after it was initially rejected for insufficient funds, NFCU chooses to treat it as a new and unique item or transaction that is subject to yet another NSF Fee. But NFCU's Account Documents never disclose that this counterintuitive and deceptive result could be possible and, in fact, suggest the opposite.

8. NFCU's Account Documents indicate that only a *single* NSF Fee will be charged per "transaction" or "item," however, many times that item is reprocessed with no request from the customer to do so. An electronic item reprocessed after an initial return for insufficient funds, especially through no action by the customer, cannot and does not fairly become a new, unique item for fee assessment purposes. This is particularly true here, where NFCU reprocesses the

items knowing there are insufficient funds, and thus does so solely to cause additional fees and increase the Credit Union's profits at the expense of its customers.

9. NFCU breaches its contract when it charges more than one $29 NSF Fee on the same item, since the contract explicitly states—and reasonable consumers understand—that the same *item* can only incur a *single* NSF Fee.

10. This practice not only violates NFCU's contracts, but is also unfair and deceptive under the consumer protection law of North Carolina (where Ms. Lambert is a citizen and resides)

11. Plaintiff and other NFCU customers have been injured by NFCU's improper practice. On behalf of herself and the Classes (defined below), Plaintiff seeks damages, restitution, and injunctive relief for NFCU's breach of contract and breach of the covenant of good faith and fair dealing and violation of the North Carolina consumer protection statute.

## PARTIES

12. Ms. Lambert is a citizen of North Carolina who maintains an NFCU checking account.

13. Defendant NFCU is a national credit union with its headquarters and principal place of business located in Vienna, Virginia. Among other things, NFCU is engaged in the business of providing retail credit union services to consumers, including Plaintiff and members of the putative classes, throughout the United States.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which at least one member of the class (Ms. Lambert) is a citizen of a State different from the Defendant. The number of members of the proposed Classes in

aggregate exceeds 100 accountholders. 28 U.S.C. § 1332(d)(5)(B).

15. This Court has personal jurisdiction over the Defendant because Defendant's actions and omissions committed in or aimed at this District gave rise to the claims alleged in this Complaint. Also, Defendant is headquartered and has its principal place of business in this District.

16. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

**SUBSTANTIVE ALLEGATIONS**

17. As alleged more fully herein, NFCU's Account Documents allow it to take certain steps when a Credit Union accountholder attempts a transaction, but does not have sufficient funds to cover it. Specifically, the Credit Union may (a) authorize the transaction and charge a *single* $20 overdraft fee ("OD Fee");[1] or (b) reject the transaction and charge a *single* $29 NSF Fee.

18. In contrast to its Account Documents, however, NFCU regularly assesses two or more NSF Fees on the *same* item or transaction.

19. This abusive practice is not universal in the financial services industry. Indeed, major banks like Chase—the largest consumer bank in the country—do not undertake the practice of charging more than one NSF Fee on the same item when it is reprocessed. Instead, Chase charges one NSF Fee even if a transaction is resubmitted for payment multiple times.

20. NFCU's Account Documents never disclose this practice. To the contrary, the Credit Union's Account Documents indicate it will only charge a single NSF Fee on an item or per transaction.

**A. Ms. Lambert's Experience**

21. In support of her claims, Ms. Lambert offers an example of NSF Fees that should

---

[1] NFCU calls its OD Fee an "OOPS fee."

not have been assessed against her checking account. As alleged below, NFCU: (a) reprocessed a previously declined transaction; and (b) charged a fee upon reprocessing.

22. On October 16, 2018, Plaintiff attempted a $96.66 insurance payment to Mutual of Omaha.

23. NFCU rejected payment of that transaction due to insufficient funds in Ms. Lambert's account and charged her a $29 NSF Fee for doing so. Ms. Lambert does not dispute the initial fee, as it is allowed by NFCU's Account Documents.

24. Unbeknownst to Ms. Lambert and without her request to NFCU to retry the transaction, however, two days later, on October 18, 2018, NFCU processed the same transaction yet again, and again NFCU rejected the transaction due to insufficient funds and charged Plaintiff *another* $29 NSF Fee.

25. *In sum, NFCU charged Plaintiff $58 in fees to attempt to process a single insurance payment.*

26. Plaintiff understood the payment to be a single transaction as is laid out in NFCU's contract, capable at most of receiving a single NSF Fee (if NFCU returned it) or a single OD Fee (if NFCU paid it).

**B. The Imposition of Multiple NSF Fees on a Single Transaction Violates NFCU's Express Promises and Representations**

27. The Deposit Agreement provides the general terms of Ms. Lambert's relationship with the Credit Union and therein NFCU makes explicit promises and representations regarding how transactions will be processed, as well as when NSF Fees and OD Fees may be assessed.

28. The Deposit Agreement does not define the term "item" or "transaction," and never states the same "item" or "transaction" can cause multiple NSF Fees.

29. Instead, the Deposit Agreement contains explicit terms indicating that NSF Fees

will only be assessed once per transaction or item—defined as a customer request for payment or transfer—when in fact NFCU regularly charges two or more NSF Fees per transaction or item even though a customer only requested the payment or transfer once.

30. NFCU's Account Documents indicate that a singular NSF Fee can be assessed on checks, ACH debits, and electronic payments.

31. NFCU's Account Documents state that it will charge $29 per item or transaction that is returned due to insufficient funds.

32. While the term "check" and "ACH debit" are not expressly defined, their usage throughout the NFCU Deposit Agreement reveals that the terms must describe all iterations of a given instruction for transfer or payment from a checking or savings account. For example, the Deposit Agreement states:

> An ACH debit might be made as a result of an authorization you gave a third party to automatically transfer funds from your account to pay your monthly insurance premium, utility bills, or car payment.

33. According to two other provisions in the Deposit Agreement, a <u>single</u> fee will be assessed when a check or debit item is returned:

> Navy Federal is authorized to refuse checks that exceed funds available in the checking account. **A fee** will be assessed in the amount shown on Navy Federal's current Schedule of Fees and Charges **for each refused check**.
>
> […]
>
> Navy Federal may return debits to the checking account (e.g., an ACH payment) if the amount of the debit exceeds funds available in the checking account. **A fee** may be assessed in the amount shown on Navy Federal's current Schedule of Fees and Charges **for each returned debit item**.

(Emphasis added.)

34. While "debit item" is not defined, the same instruction for payment on an account cannot conceivably become a new "item" each time it is rejected for payment then reprocessed,

especially when—as here—Plaintiff took no action to resubmit it.

35. Similarly, the Online Banking Agreement states that "a" (singular) NSF Fee "may" be assessed on a returned payment:

> **3. Failed or Returned Transactions.**
> In using the Service, you are requesting us to make payments for you from your Payment Account. If we are unable to complete the withdrawal from your Payment Account for any reason (for example, *there are non-sufficient funds in your Payment Account to cover the transaction*, or the transaction would exceed the credit or overdraft protection limit of your Payment Account), the payment may not be made. In some instances, you will receive a return notice from us. In each such case, you agree that:
>
> - you will reimburse us immediately upon demand for the transaction amount that has been returned to the Service;
> - you will reimburse us immediately upon demand for any transaction amount paid by the Service;
> - *we may charge you a non-sufficient funds (NSF) fee* in accordance with our Schedule of Fees and Charges available at **navyfederal.org**, even if the payment is not returned but is paid[.]

(Emphasis added.)

36. The Deposit Agreement also states: "If we do not pay an overdraft, your transaction will be declined and/or your check/ACH will be returned, unpaid." This eliminates any right of NFCU to reprocess the same transaction and charge multiple NSF Fees.

37. There is zero indication anywhere in the Account Documents that the same "debit item," "ACH debit," "check" or other withdrawal is eligible to incur multiple NSF Fees.

38. A "transaction," like a check or ACH, is a request for payment by an accountholder. It does not become a new "transaction" when it is later reprocessed by NFCU.

39. Even if NFCU reprocesses an instruction for payment, it is still the same "item" or "transaction." The Credit Union's reprocessing is simply another attempt to effectuate Ms. Lambert's original order or instruction.

40. The disclosures identified above never discuss a circumstance where NFCU may assess multiple NSF Fees for a single check or ACH transaction that was returned for insufficient

funds and later reprocessed one or more times and returned again.

41. Because Ms. Lambert only made one authorization for payment for her ACH transaction, there is no new "item" or "transaction" when that transaction is rejected then automatically reprocessed for payment by NFCU.

42. In sum, NFCU promises that at most one $29 NSF Fee will be assessed per electronic payment, check, ACH debit, or debit item, and these terms must mean all iterations of the same instruction for payment. As such, NFCU breached the contract when it charged more than one NSF Fee per item.

43. Reasonable consumers understand any given authorization for payment to be one, singular "debit item," "ACH debit" or other withdrawal, as those terms are used in NFCU's Account Documents.

44. Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same transaction will be treated as the same "item," which the Credit Union will either authorize (resulting in an overdraft item) or reject (resulting in a returned item) when it decides there are insufficient funds in the account. Nowhere does NFCU disclose that it will treat each reprocessing of a check or ACH payment as a separate item, subject to additional fees, nor do NFCU customers ever agree to such fees.

45. Customers reasonably understand, based on the language of the Deposit Agreement and NFCU's other Account Documents, that the Credit Union's reprocessing of checks or ACH payments are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger NSF Fees. In other words, it is always the same item or transaction.

46. Banks and credit unions like NFCU that employ this abusive practice know how to plainly and clearly disclose it. Indeed, other banks and credit unions that do engage in this abusive

practice disclose it expressly to their accountholders—something NFCU never did.

47. For example, First Citizens Bank, a major institution in the Carolinas, engages in the same abusive practice as NFCU, but at least expressly states:

> Because we may charge a service fee for an NSF item each time it is presented, **we may charge you more than one service fee for any given item**. All fees are charged during evening posting. When we charge a fee for NSF items, the charge reduces the available balance in your account and may put your account into (or further into) overdraft.

(emphasis added).

48. First Hawaiian Bank engages in the same abusive practices as NFCU, but at least currently discloses it in its online banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

(emphasis added).

49. Klein Bank similarly states in its online banking agreement:

> [W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment (electronic or check) is submitted to us for payment from your Bill Payment Account when, at the time of posting, your Bill Payment Account is overdrawn, would be overdrawn if we paid the item (whether or not we in fact pay it) or does not have sufficient available funds; or (2) we return, reverse, or decline to pay an item for any other reason authorized by the terms and conditions governing your Bill Payment Account. We will charge an NSF/Overdraft Fee as provided in this section regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the bill payment.

50. NFCU provides no such disclosure, and in so doing, deceives its accountholders.

C. **The Imposition of Multiple NSF Fees on a Single Transaction Breaches NFCU's Duty of Good Faith and Fair Dealing**

51. Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are invested with a discretionary power over the

other party. In such circumstances, the party with discretion is required to exercise that power and discretion in good faith. This creates an implied promise to act in accordance with the parties' reasonable expectations and means that the Credit Union is prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, the Credit Union has a duty to honor transaction requests in a way that is fair to Ms. Lambert and its other customers and is prohibited from exercising its discretion to pile on ever greater penalties on the depositor. Here—in the adhesion agreements NFCU foisted on Ms. Lambert and its other customers—NFCU has provided itself numerous discretionary powers affecting customers' credit union accounts. But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, the Credit Union abuses that discretion to take money out of consumers' account without their permission and contrary to their reasonable expectations that they will not be charged multiple fees for the same transaction.

52. As set forth in its Deposit Agreement, NFCU states "*A fee* may be assessed in the amount shown on Navy Federal's current Schedule of Fees and Charges *for each returned debit item*." (Emphasis supplied.) The Online Banking Agreement consistently states "*we may charge you a non-sufficient funds (NSF) fee* in accordance with our Schedule of Fees and Charges." (Emphasis added.) NFCU exercises its discretion in its own favor—and to the prejudice of Ms. Lambert and its other customers—when it reprocesses a transaction when it knows a customer's account lacks funds and then charges additional NSF Fees on a single item. Further, NFCU abuses the power it has over customers and their credit union accounts and acts contrary to their reasonable expectations under the Deposit Agreement. This is a breach of the Credit Union's implied covenant to engage in fair dealing and act in good faith.

53. Further, NFCU maintains complete discretion not to assess NSF Fees on

transactions at all. As alleged in the previous paragraph, the Credit Union "a fee may be assessed" or "we may charge you a non-sufficient funds (NSF) fee." By exercising its discretion in its own favor—and to the prejudice of Ms. Lambert and other customers—by charging more than one NSF Fee on a single item, NFCU breaches the reasonable expectation of Ms. Lambert and other customers and in doing so violates the implied covenant to act in good faith.

54. It was bad faith and totally outside Ms. Lambert's reasonable expectations for NFCU to use its discretion to assess $58 in fees for a single insurance payment.

55. When NFCU charges multiple NSF Fees, the Credit Union uses its discretion to define the meaning of "debit item" and "ACH debit" in an unreasonable way that violates common sense and reasonable consumer expectations. NFCU uses its contractual discretion to set the meaning of those terms to choose a meaning that directly causes more NSF Fees.

56. Moreover, NFCU provides itself discretion to refuse to reprocess transactions that are initially rejected. It abuses that discretion to repeatedly reprocess transactions and to charge fees each time.

## CLASS ALLEGATIONS

57. Ms. Lambert brings this action on behalf of herself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

58. The proposed "Classes" are defined as:

**Nationwide Multiple NSF Fee Class**
All NFCU checking account holders in the United States who, during the applicable statute of limitations, were charged multiple NSF Fees on the same item (the "Class").

**North Carolina Multiple NSF Fee Class**
All NFCU checking account holders in North Carolina who, during the applicable statute of limitations, were charged multiple NSF Fees on the same item (the "North Carolina Subclass").

The classes are collectively referred to as the "Classes."

59.	Plaintiff reserves the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

60.	Specifically excluded from the Classes are NFCU, its parents, subsidiaries, affiliates, officers and directors, any entity in which NFCU has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

61.	The members of the Classes are so numerous that joinder is impractical. The Classes consist of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to NFCU's records.

62.	The claims of the representative plaintiff are typical of the claims of the Classes in that the representative plaintiff, like all members of the Classes, was charged multiple NSF Fees. The representative plaintiff, like all members of the Classes, has been damaged by NFCU's misconduct in that she has paid assessed unfair and unconscionable NSF Fees. Furthermore, the factual basis of NFCU's misconduct is common to all members of the Classes, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes. Ms. Lambert has suffered the harm alleged and has no interests antagonistic to the interests of any other members of the Classes.

63.	There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual members of the Classes.

64.	The questions of law and fact common to the Classes include:

    A.	Whether NFCU charged multiple NSF Fees on a single transaction;

B. Whether NFCU breached its own contract by charging multiple NSF Fees on a single transaction;

C. Whether NFCU breached the covenant of good faith and fair dealing by charging multiple NSF Fees on a single transaction;

D. Whether NFCU violated North Carolina consumer protection law by charging multiple NSF Fees on a single transaction;

E. The proper method or methods by which to measure damages; and

F. The declaratory and injunctive relief to which the Classes are entitled.

65. Ms. Lambert is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions. Accordingly, Ms. Lambert is an adequate representative and will fairly and adequately protect the interests of the Classes.

66. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual class member's claim is small relative to the complexity of the litigation, and due to the financial resources of NFCU, no class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Classes will continue to suffer losses and NFCU's misconduct will proceed without remedy.

67. Even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might

otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

68. Plaintiff suffers a substantial risk of repeated injury in the future. Plaintiff, like all members of the Classes, is at risk of additional NSF Fees on repeated reprocessing of transactions. Plaintiff and the members of the Classes are entitled to injunctive and declaratory relief as a result of the conduct complained of herein. Money damages alone could not afford adequate and complete relief, and injunctive relief is necessary to restrain NFCU from continuing to commit its unfair and illegal actions.

69. NFCU has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole.

**CAUSES OF ACTION**

**FIRST CLAIM FOR RELIEF**
**Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing**
**(On Behalf of the Classes)**

70. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

71. Plaintiff and NFCU have contracted for credit union account deposit and checking services, as embodied in NFCU's Deposit Agreement and related documentation.

72. NFCU's account documents explicitly state that, when a customer lacks sufficient funds to cover a transaction, the Credit Union may either: (a) authorize the transaction and charge a single OD Fee; or (b) reject the transaction and charge a single NSF fee. NFCU regularly violates its contractual promises by charging multiple NSF Fees on a single transaction.

73. Therefore, NFCU breached the terms of its contract with consumers by charging multiple NSF Fees on the same transaction.

74. Under Virginia law, made applicable to all accountholders in the Deposit Agreement, every contract carries with it an implied covenant of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. The covenant requires faithfulness to an agreed common purpose and consistency with the justified expectations of the other party to a contract. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

75. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify contract terms, and interference with or failure to cooperate in the other party's performance.

76. NFCU has breached the covenant of good faith and fair dealing in the contract through its multiple NSF Fee policy and practice as alleged herein. Specifically, NFCU harms consumers by exercising its contractual discretion in bad faith, even though that discretion is only vested in NFCU, in a way which no reasonable consumer would anticipate. NFCU abuses that discretion to take money out of customers' accounts without their permission and contrary to their reasonable expectations that they will not be charged multiple NSF Fees for the same transaction. Specifically, NFCU regularly: (a) reprocesses previously declined transactions, even when NFCU knows a customer's account lacks sufficient funds; and (b) charges NSF Fees upon reprocessing of previously declined transactions.

77. Plaintiff and members of the Classes have performed all, or substantially all, of the obligations imposed on them under the Deposit Agreement.

78. Plaintiff and members of the Classes have sustained damages as a result of NFCU's breaches of contract and breaches of the covenant of good faith and fair dealing.

## SECOND CLAIM FOR RELIEF
### Violation of North Carolina Unfair and Deceptive Trade Practices Act
### (On Behalf of the North Carolina Subclass)

79. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

80. As described herein, NFCU's unconscionable and unfair actions regarding the assessment of NSF Fees constitute unfair competition and unfair and deceptive trade practices as defined by the laws of the United States of America and the State of North Carolina, including but not limited to N.C.G.S. § 75.1-1 et seq.

81. NFCU engaged in unfair and deceptive acts and practices relating to the imposition of NSF fees in violation of N.C. Gen. Stat. §§ 75-1.1 et seq.

82. As alleged herein, charging multiple NSF Fees on a single transactions is both unfair and deceptive, as it offends public policy, and is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and it deceives customers who do not expect the charges.

83. NFCU's acts and practices were in and affected commerce as defined by Chapter 75 of the North Carolina General Statutes.

84. NFCU's acts and practices proximately caused injury to Plaintiff and the North Carolina Subclass, and they are entitled to, *inter alia*, damages and declaratory relief.

85. Because of the unfair and deceptive acts and practices of NFCU, Plaintiff and the North Carolina Subclass seek an award of treble damages and attorneys' fees pursuant to N.C.

Gen. Stat. §§ 75-16, 75.16.1.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Classes demand a jury trial on all claims so triable and judgment as follows:

1. Declaring NFCU's NSF Fee policies and practices to be wrongful, unfair and unconscionable;

2. Restitution of all relevant fees paid to NFCU by Plaintiff and the Classes, as a result of the wrongs alleged herein in an amount to be determined at trial;

3. Disgorgement of the ill-gotten gains derived by NFCU from its misconduct;

4. Actual damages in an amount according to proof;

5. Statutory treble damages as permitted by law;

6. Punitive and exemplary damages;

7. Pre-judgment interest at the maximum rate permitted by applicable law;

8. Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

9. Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this complaint that are so triable as a matter of right.

Dated: January 24, 2019  Respectfully submitted,


/s/
Kristi C. Kelly, Esq., VSB #72791
Andrew J. Guzzo, Esq., VSB #82170

Casey S. Nash, Esq., VSB #84261
KELLY & CRANDALL, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
Telephone: (703) 424-7572
Fax: (703) 591-0167
Email: kkelly@kellyandcrandall.com
Email: aguzzo@kellyandcrandall.com
Email:  casey@kellyandcrandall.com

Jeffrey D. Kaliel (pro hac vice to be filed)
Sophia G. Gold (pro hac vice to be filed)
**KALIEL PLLC**
1875 Connecticut Ave., NW, 10th Floor
Washington, D.C.  20009
(202) 350-4783
jkaliel@kalielpllc.com
sgold@kalielpllc.com

Hassan A. Zavareei (pro hac vice to be filed)
Andrea Gold (pro hac vice to be filed)
**TYCKO & ZAVAREEI LLP**
1828 L Street, NW, Suite 1000
Washington, DC 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
hzavareei@tzlegal.com
agold@tzlegal.com

Jeff Ostrow (pro hac vice to be filed)
Jonathan M. Streisfeld (pro hac vice to be filed)
**KOPELOWITZ OSTROW FERGUSON WEISELBERG GILBERT**
One W. Las Olas Blvd.
Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
ostrow@kolawyers.com
streisfeld@kolawyers.com

*Attorneys for Plaintiff and the Putative Classes*