# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF VIRGINIA

# ALEXANDRIA DIVISION

| | |
|---|---|
| RUBY LAMBERT, individually and on behalf of all others similarly situated, | Case No. 1:19-cv-00103-LO-MSN |
| Plaintiff, | |
| v. | |
| NAVY FEDERAL CREDIT UNION, | |
| Defendant. | |

## REPLY IN SUPPORT OF NAVY FEDERAL CREDIT UNION'S

## MOTION TO DISMISS

D. Bradford Hardin, Jr., VSB 76812
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Ave., NW
Suite 800
Washington, DC 20006-3401
Tel.:    (202) 973-4238
Facsimile: (503) 973-4438
Email: bradfordhardin@dwt.com

Fred Burnside (*pro hac vice*)
Rebecca J. Francis (*pro hac vice*)
920 Fifth Ave., Suite 3300
Seattle, WA 98104
Tel.:    (206) 622-3150
Emails: fredburnside@dwt.com
             rebeccafrancis@dwt.com

*Counsel for Navy Federal Credit Union*

Dated:  April 22, 2019

# **TABLE OF CONTENTS**

I.    INTRODUCTION AND SUMMARY OF REPLY ................................................. 1

II.   ARGUMENT ................................................................................................. 2

   A.   Federal Law Preempts Ms. Lambert's Claims. ................................................. 2

     1.   Ms. Lambert Does Not Allege an Affirmative Misrepresentation Claim. ................. 2

     2.   Ms. Lambert's Breach of Contract Claim Does Not Survive Preemption. ................. 5

   B.   Ms. Lambert's Breach of Contract Claims Fail. ................................................. 6

     1.   Navy Federal Complied with Its Important Disclosures. ............................................. 6

     2.   Navy Federal Did Not Breach the Duty of Good Faith and Fair Dealing. ................. 10

   C.   Ms. Lambert's UDTPA Claim Fails. ................................................................. 12

     1.   The Parties' Contractual Choice of Law Controls ..................................................... 12

     2.   Compliance with the Important Disclosures Is Not Unfair or Deceptive ................. 16

     3.   Breach of Contract Allegations Do Not State a UDTPA Claim ................................ 17

     4.   Factual Development Will Not Salvage Ms. Lambert's UDTPA Claim. ................. 19

III.  CONCLUSION .............................................................................................. 20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011)............................................................................18

*Bassett Seamless Guttering, Inc. v. GutterGuard, LLC*,
    2006 WL 156874 (M.D.N.C. 2006)....................................................15

*Booker v. S. Car. Dep't of Corrections*,
    855 F.3d 533 (4th Cir. 2017) ..............................................................10

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
    155 F.3d 331 (4th Cir. 1998) .........................................................17, 18

*Canon U.S.A., Inc. v. Cavin's Bus. Sols., Inc.*,
    208 F. Supp. 3d 494 (E.D.N.Y. 2016) ................................................15

*Carolina Rest. Grp., Inc. v. PepsiCo Sales, Inc.*,
    2015 WL 4250395 (W.D.N.C. 2015) ..................................................19

*Checking Account Overdraft Litig., In re*,
    694 F. Supp. 2d 1302 (S.D. Fla. 2010) ............................................6, 16

*Cyberlock Consulting, Inc. v. Info Experts, Inc.*,
    876 F. Supp. 2d 672 (E.D. Va. 2012) ..................................................12

*Dealers Supply Co. v. Cheil Indus.*,
    348 F. Supp. 2d. 579 (M.D.N.C. 2004) ...............................................15

*Dillon v. Leazer Grp., Inc.*,
    -- F. Supp. 3d ---, 2019 WL 1245784 (E.D.N.C. 2019).......................19

*Ellis v. Louisiana-Pac. Corp.*,
    699 F.3d 778 (4th Cir. 2012) ..............................................................17

*Freedman v. Am. Online, Inc.*,
    325 F. Supp. 2d 638 (E.D. Va. 2004) ......................................13, 14, 15

*G.P.P., Inc. v. Guardian Prot. Prod., Inc.*,
    2015 WL 3992878 (E.D. Cal. 2015).................................................15, 16

*Gutierrez v. Wells Fargo Bank, N.A.*,
    704 F.3d 712 (9th Cir. 2012) .............................................................4, 6

ii

*Gutierrez v. Wells Fargo Bank, N.A.*,
   730 F. Supp. 2d 1080 (N.D. Cal. 2010) ....................................................................4

*Hanjy v. Arvest Bank*,
   94 F. Supp. 3d 1012 (E.D. Ark. 2015) ......................................................................6

*Hitachi Credit Am. Corp. v. Signet Bank*,
   166 F.3d 614 (4th Cir. 1999) ...........................................................................13, 14

*HSBC Bank USA, N.A. Debit Card Overdraft Fee Litig., In re*,
   1 F. Supp. 3d 34 (E.D.N.Y. 2014) ............................................................................6

*King v. Carolina First Bank*,
   26 F. Supp. 3d 510 (D. S.C. 2014) ...........................................................................6

*LTD Mgmt. Co. v. Holiday Hosp. Franchising, Inc.*,
   2008 WL 7281926 (E.D. Va. 2008) ....................................................................12, 13

*Morris v. Bank of Am., N.A.*,
   2019 WL 1274298 (W.D.N.C. 2019) .......................................................................10

*Murr v. Capital One Bank (USA), N.A.*,
   28 F. Supp. 3d 575 (E.D. Va. 2014) .........................................................................4

*Perry v. Meredith Corp.*,
   77 Fed. App'x 128 (4th Cir. 2003) ..........................................................................17

*Pyott-Boone Elecs. Inc. v. IRR Trust for Donald L. Fetterolf Dated Dec. 9, 1997*,
   918 F. Supp. 3d 532 (E.D. Va. 2013) ......................................................................12

*Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*,
   407 F.3d 631 (4th Cir. 2005) ...................................................................................9

*Run Them Sweet, LLC v. CPA Global Ltd.*,
   224 F. Supp. 3d 462 (E.D. Va. 2016) .............................................................13, 14, 15

*Saturn Distr. Corp. v. Williams*,
   905 F.2d 719 (4th Cir. 1990) ..................................................................................18

*Stoney Glen LLC v. S. Bank & Trust Co.*,
   944 F. Supp. 2d 460 (E.D. Va. 2013) ...............................................................10, 11, 12

*Sullivan v. Lab. Corp. of Am. Holdings*,
   2018 WL 1586471 (M.D.N.C. 2018) .......................................................................19

*TD Bank, N.A., In re*,
   150 F. Supp. 3d 593 (D.S.C. 2015) ...........................................................................6

*Van Leuvan v. Cushman & Wakefield US, Inc.*,
2019 WL 123893 (E.D.N.C. 2019) ............................................................................19

*Varnell, Struck & Assocs., Inc. v. Lowe's Cos.*,
2008 WL 1745880 (W.D.N.C. 2008) ..........................................................................19

*Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co.*,
386 F.3d 581 (4th Cir. 2004) ......................................................................................16

*Whittington v. Mobiloil Fed. Credit Union*,
2017 WL 6988193 (E.D. Tex. 2017) .................................................................. *passim*

**State Cases**

*Gray v. N.C. Ins. Underwriting Ass'n*,
352 N.C. 61, 529 S.E.2d 676 (2000) ...........................................................................18

*Squire v. Va. Housing Dev. Auth.*,
287 Va. 507, 758 S.E.2d 55 (2014) ...............................................................................7

*TM Delmarva Power LLC v. NCP of Va., LLC*,
263 Va. 116, 557 S.E.2d 199 (2002) .............................................................................8

*United Labs, Inc. v. Kuykendall*,
335 N.C. 183, 437 S.E.2d 374 (1993) .........................................................................16

*Ussery v. Branch Banking & Trust Co.*,
368 N.C. 325, 777 S.E.2d 272 (2015) .........................................................................16

*Wilson v. Holyfield*,
227 Va. 184, 313 S.E.2d 396 (1984) .............................................................................9

**Federal Regulations**

12 C.F.R. § 701.1 .................................................................................................................6

12 C.F.R. § 707.1(d) ...........................................................................................................3

12 C.F.R. § 707.4(b)(4) ......................................................................................................3

## I.    INTRODUCTION AND SUMMARY OF REPLY

Plaintiff Ruby Lambert concedes Navy Federal may charge an NSF fee for each returned debit item presented against her Navy Federal account.  This case turns on whether Ms. Lambert had *two* debit items returned for insufficient funds, causing *two* NSF fees.  She did.  Mutual of Omaha presented *two* ACH debit items on Ms. Lambert's behalf on *two* different dates; she concedes she had insufficient funds on *both* occasions; and she admits Navy Federal returned each debit item as a result.  These facts bar Ms. Lambert's claims, under any theory.

Rather than dispute these outcome-determinative facts, Ms. Lambert responds by (a) re-casting her failure-to-disclose allegations as misrepresentations, in an attempt to avoid preemption; (b) asking the Court to "[s]et aside" the contract language she does not like, conceding the only way to rule for her is to delete words from the Important Disclosures; and (c) suggesting she has a fundamental right to bring a North Carolina UDTPA claim (which she does not).  Opp. at 15.  Her efforts fail, for at least three reasons:

*First*, federal law preempts Ms. Lambert's claims because she *nowhere* identifies an affirmative misrepresentation by Navy Federal.  Instead, she continues to use her state-law claims to require more or different disclosures, as shown by her continued reliance on the disclosures of *other* financial institutions.  *See* Opp. at 13-14, 17 n.9.

*Second*, Ms. Lambert's contract claims fail because she admits her interpretation requires the Court to read words out of the contract and others in isolation.  But the plain terms of the contract, read as a whole, allow Navy Federal to do what it did here:  assess an NSF fee "for each returned debit item."  That defeats any contract-based claim.

*Third*, Ms. Lambert's North Carolina UDTPA claim fails because she chose Virginia law, the UDTPA is not a fundamental policy of North Carolina and so, cannot evade her choice-of-law provision, and her UDTPA claim restates her contract claim, taking it outside the UDTPA.

## II.    ARGUMENT

### A.    Federal Law Preempts Ms. Lambert's Claims.

Ms. Lambert does not dispute that federal law preempts state-law claims seeking to dictate the disclosures a federal credit union must make, or "what fees it may charge and how it may charge them." *Whittington v. Mobiloil Fed. Credit Union*, 2017 WL 6988193, *9 (E.D. Tex. 2017) (citing 12 C.F.R. § 701.35(c)); *see also id.* at *9-10 (citing 12 C.F.R. § 707.1(d)); Mot. to Dismiss ("Mot.") at 12; Opp. at 5-13.  Instead, she dresses up her failure-to-disclose theories as affirmative misrepresentations—which federal law would not preempt—and argues her breach of contract claim survives merely because it is a breach of contract claim, which she suggests always survives preemption.  Opp. at 8-13; Mot. at 14.  Both efforts fail, and the Court should find her claims preempted as a matter of law.

### 1.    Ms. Lambert Does Not Allege an Affirmative Misrepresentation Claim.

Despite her repeated references to "affirmative misstatements" in her briefing, Ms. Lambert never actually identifies any "affirmative misrepresentation" by Navy Federal.  *See* Opp. at 8-9, 11-13; Compl. ¶¶ 7, 20, 37, 40, 44; Mot. at 14.  To the contrary, in her Complaint she faults Navy Federal for allegedly *failing* to disclose it would charge an NSF fee each time a debit item is re-presented and returned for insufficient funds.  *See* Mot. at 14 (quoting Compl. ¶¶ 7, 20, 37, 40, 44); *see also* Opp. at 3 (complaining Navy Federal's Important Disclosures are "inadequate").  And in both her Complaint and Opposition, she argues that to avoid state-law liability, Navy Federal's Important Disclosures should mirror those of *other* financial institutions, whose disclosures she prefers.  *See* Opp. at 13-14, 17 n.9; Compl. ¶¶ 47-49.  Indeed, Ms. Lambert alleges "NFCU provides no such disclosures, ***and in so doing***, deceives its accountholders."  Compl. ¶ 50 (emphasis added).  Thus, her real issue is with what she believes Navy Federal's Important Disclosures *should* but *do not* say.  *See* Opp. at 13-14.

That Ms. Lambert bases her claims on an alleged *failure* to adequately disclose how or when Navy Federal will assess an NSF fee brings this case squarely within *Whittington*, where the court found the Federal Credit Union Act ("FCUA") and Truth In Savings Act ("TISA") regulations preempted state-law claims challenging the assessment of multiple fees on an allegedly single transaction—the *same* theory Ms. Lambert pursues here.  There, the court saw through plaintiff's efforts to characterize her criticisms of fee disclosures as affirmative misrepresentations:  "Whittington castigates [defendant] for employing unconscionable overdraft programs and making misleading statements, citing various provisions in the [contract]….  As [defendant] correctly points out, these practices were fully disclosed to Whittington and, for the reasons stated previously, ***they are preempted***."  *Id.* at *10 (emphasis added).

So too, here.  Ms. Lambert accuses Navy Federal of "unconscionable" practices "regarding the assessment of NSF Fees," Compl. ¶ 80, and (now) complains Navy Federal's Important Disclosures about NSF fees are "misleading," Opp. at 12.  But she does not dispute that the Important Disclosures fully disclosed that Navy Federal would assess an NSF fee "for each returned debit item."  Compl., Ex. A at 4.  Ms. Lambert may not use her state-law claims— whatever their label—"to force additional disclosures or require that disclosures be made in a particular manner," or "to dictate to a federal credit union what fees it may charge and how it may charge them."  *Id.* at *10, *9.[1]

---

[1] Ms. Lambert tries to argue that she does not challenge the *type* of fee assessed, but she later admits her claims challenge "*how* [Navy Federal] may charge" NSF fees (i.e., for re-presented debits).  *Whittington*, 2017 WL 6988193, at *9; Opp. at 7.  As Ms. Lambert concedes, TISA gives federal credit unions authority to determine "*the conditions under which the fee may be imposed*," and preempts "state laws that 'are inconsistent with' [TISA's] requirements."  Opp. at 7-8 (quoting 12 C.F.R. §§ 707.1(d) & 707.4(b)(4)) (emphasis in Opposition).  A ruling prohibiting Navy Federal from assessing an NSF fee for a returned debit item when that debit item was a re-presentment would contradict TISA's grant of authority to Navy Federal to determine "the conditions under which" to impose NSF fees, making such a claim preempted. *See Whittington*, 2017 WL 6988193, at *7, *9; 12 C.F.R. §§ 707.1(d) & 707.4(b)(4); Mot. at 15.

Nor do Ms. Lambert's claims bear likeness to the affirmative misrepresentation claims that survived in *Whittington* and *Murr v. Capital One Bank (USA), N.A.*, 28 F. Supp. 3d 575 (E.D. Va. 2014), on which she relies. *See* Opp. at 12-13. In those cases, the surviving claims arose from affirmative representations that were untrue. In *Whittington*, the defendant advertised a linked-account program, representing that if a customer linked a second account to her checking account to cover shortfalls, doing so would save the customer transfer fees. *Whittington*, 2017 WL 6988193, at *2. But that representation was false, as it cost the consumer *more* money to cover shortfalls with linked accounts. *Id.* at *10-*11. The plaintiff also alleged the credit union affirmatively misrepresented customers' available account balances, which caused overdraft charges. *Id.* at *10-11. Similarly, in *Murr*, 28 F. Supp. 3d at 583-84, Capital One made an offer that a particular program was beneficial and would save the plaintiff money, when in fact, the "[o]ffer most likely did not amount to an opportunity to 'start saving.'" *Id.*[2] Ms. Lambert makes no such allegations. She does not argue Navy Federal's statement that it would charge an NSF fee for "each returned debit item" is untrue; she simply disagrees with how to interpret that accurate representation and insists additional disclosures are necessary.

Ms. Lambert also cannot avoid preemption by inserting words into the agreement to create a misrepresentation. She argues the Important Disclosures "indicate" that Navy "will only charge a single [] fee," Compl. ¶¶ 8, 20; Opp. at 8, and "confer[] only the right to charge 'a' fee per 'item.'" Opp. at 11. But the Important Disclosures *do not use those words*: they nowhere use the word "single" to modify "fee" and do not state Navy Federal will "charge a fee per item," regardless how many times debit items are returned for insufficient funds. Rather, the Important

---

[2] *See also Gutierrez v. Wells Fargo Bank, N.A.*, 704 F.3d 712, 729 (9th Cir. 2012) (affirmative misrepresentation claims surviving preemption stemmed from false marketing statements, not account disclosure omissions); *Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp. 2d 1080, 1116-17 (N.D. Cal. 2010) (describing representations).

Disclosures specify that: "A fee may be assessed in the amount shown on Navy Federal's current *Schedule of Fees and Charges* for each returned debit item." Compl., Ex. A at 4. Here, there were two returned debit items on two different days and thus, two NSF fees—one for each returned debit item. Ms. Lambert cannot create misrepresentations by altering the contract.

### 2.   Ms. Lambert's Breach of Contract Claim Does Not Survive Preemption.

The mere fact Ms. Lambert also pleads a breach of contract claim also does not save her Complaint from preemption. *See* Opp. at 8-11. Courts have held a breach of contract claim may survive preemption if a defendant makes a representation that contradicts the express terms of the agreement, such as misrepresenting the amount of funds in the customer's account to assess an overdraft fee (i.e., the customer had sufficient funds in the account when defendant assessed the overdraft fee, contrary to the representation and contract terms). *Whittington*, 2017 WL 6988193, at *11 (collecting cases); Mot. at 14-15. But Ms. Lambert does not assert such a claim, and does not allege Navy Federal breached any *express* contract terms. She does not allege, for example, that Navy Federal issued *two* NSF fees on October 16, 2018, when Mutual of Omaha submitted *one* debit item and Navy Federal returned that *one* debit item for insufficient funds, or that Navy Federal assessed an NSF fee when she had sufficient funds. *See* Compl. ¶¶ 22-23.

Instead, she complains about the NSF fee Navy Federal assessed on *October 18*, when Mutual of Omaha submitted a second debit item and Navy Federal returned *that* debit item for insufficient funds. *Id.* ¶ 24. But she does not and cannot identify any *express* words in the Important Disclosures promising that Navy Federal would not assess an NSF fee for a re-presented debit item where—as here—the debit item was "returned" for insufficient funds. That's so because the Important Disclosures provide the opposite, expressly allowing Navy Federal to assess an NSF fee "for each returned debit item," without regard to whether the

"returned debit item" is a re-presentment.  *See* Compl., Ex. A at 4; Mot. at 15-20.  Indeed,

because the Important Disclosures do *not* make the promise Ms. Lambert foists onto them, she

rests *all* her claims on her theory that the Important Disclosures are "inadequate."  Opp. at 3; *see*

*also* Compl. ¶¶ 7, 20, 40, 44, 46-49 (basing claims on the theory the Important Disclosures fail to

disclose Navy Federal's NSF fee practices).  Federal law preempts that theory, and the Court

should dismiss Ms. Lambert's claims.  *See* Mot. at 14-15; *Whittington*, 2017 WL 6988193, at

*10 (12 C.F.R. § 701.1 preempts claims seeking "to use state law to force additional disclosures

or require that disclosures be made in a particular manner").[3]

> **B.      Ms. Lambert's Breach of Contract Claims Fail.**
>
> **1.      Navy Federal Complied with Its Important Disclosures.**

Ms. Lambert admits Navy Federal's Important Disclosures informed her that Navy

Federal would assess "[a] fee … for each returned debit item."  Compl., Ex. A at 4.  And she

---

[3] It makes no difference that other courts addressing other breach of contract theories have
declined to find preemption.  *See* Opp. at 9-11.  In evaluating Navy Federal's preemption
arguments, the Court must look beyond the label applied to the claim and "inquire into the
soundness of the state law claims asserted."  *In re TD Bank, N.A.*, 150 F. Supp. 3d 593, 609-10
(D.S.C. 2015).  In doing just that, the court in *In re TD Bank* distinguished as unpersuasive
nearly all the authority on which Ms. Lambert relies, *see* Opp. at 9-11, following instead
*Gutierrez*, which held federal law preempts state regulation of financial institutions' conferred
authority *and* any state requirement to make affirmative disclosures—regardless how those
claims are styled.  *In re TD Bank*, 150 F. Supp. 3d at 613-17 & n.7; *Gutierrez*, 704 F. 3d at 729.
As the court in *In re TD Bank* observed, *In re Checking Account Overdraft Litig.*, 694 F. Supp.
2d 1302 (S.D. Fla. 2010), has become "something of an echo-chamber," and the courts in *Hanjy
v. Arvest Bank*, 94 F. Supp. 3d 1012 (E.D. Ark. 2015), *In re HSBC Bank USA, N.A. Debit Card
Overdraft Fee Litig.*, 1 F. Supp. 3d 34 (E.D.N.Y. 2014), and *King v. Carolina First Bank*, 26 F.
Supp. 3d 510 (D.S.C. 2014), have reflexively cited that case for the proposition that contract and
tort claims against financial institutions are not preempted, without properly following "a more
nuanced understanding of how state law is preempted" under *Gutierrez*.  *In re TD Bank*, 150 F.
Supp. 3d at 613 n.7.  Nor do these cases—or any of Ms. Lambert's other preemption cases—
involve challenges to disclosures based on the assessment of multiple insufficient funds fees for
an allegedly single transaction, the precise scenario presented and found preempted in
*Whittington*.  *See* Opp. at 10-11 (citing *Smallwood v. Sovereign Bank, FSB*, 2012 WL 243744
(N.D. W.Va. 2014) (no preemption where plaintiff was current when defendant began collection
efforts); *Faulkner v. OneWest Bank*, 2010 WL 2472275 (N.D. W. Va. 2010) (no preemption
where plaintiffs alleged breach for rescinding a modification agreement); *Wittenberg v. First
Indep. Mortg. Co.*, 2011 WL 1357483 (N.D. W. Va. 2011) (no preemption where plaintiff
alleged a bank denied a permanent loan modification after promising to provide it)).

does not dispute that Mutual of Omaha submitted two ACH debits on two different dates, October 16 and 18, 2018, each of which Navy Federal "returned" for insufficient funds, triggering one NSF fee "for each returned debit item." *See* Opp. at 13; Compl. ¶¶ 22-24; Mot. at 20. Thus, Navy Federal assessed one NSF "for each returned debit item," as the plain words of the Important Disclosures said it would do. *See* Mot. at 20; Compl., Ex. A at 4.

To get around these undisputed facts, Ms. Lambert urges the Court to read "each returned debit" out of the Important Disclosures, isolate the term "item," and inject the words "single" or "one" into the contract. *See* Opp. at 2-3, 13-20. But the words of the Important Disclosures, read together and in context—as the Court must—show that "[a] fee … for each returned debit item" means Navy Federal will assess "a fee" for "every (each) ACH debit requested by an Originator [Mutual of Omaha] for payment (debit item) that Navy Federal passes back to the ODFI [Mutual of Omaha's bank] for insufficient funds (returned)." Mot. at 18-19. Whether debit items Mutual of Omaha submitted were for one insurance premium is irrelevant to the dispositive question whether *two* debit items were returned for insufficient funds. They were.[4]

In interpreting contracts, the Court may not simply "[s]et aside those adjectives ['returned debit']"—as Ms. Lambert advocates—to conclude the Important Disclosures actually "promise … one NSF Fee per 'item.'" Opp. at 15. "No word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly." *Squire v. Va. Housing Dev. Auth.*, 287 Va. 507, 516, 758 S.E.2d 55, 60 (2014). Further, "contracts must be considered as a whole '*without giving*

---

[4] If Ms. Lambert wants Mutual of Omaha to only ever submit one debit item for her insurance payments, regardless whether she has sufficient funds when Mutual of Omaha submits the debit item, she must take that up with Mutual of Omaha, not Navy Federal. "Navy Federal *cannot* cancel an agreement that [she has] with [Mutual of Omaha] or revoke the authorization [she has] provided [Mutual of Omaha] for recurring automatic transfers from [her] accounts." Compl., Ex. A at 11 (emphasis added).

7

*emphasis to isolated terms*.'"  *TM Delmarva Power LLC v. NCP of Va., LLC*, 263 Va. 116, 119, 557 S.E.2d 199, 200 (2002) (emphasis added).  Ms. Lambert cannot disregard inconvenient modifiers or construe "item" in isolation, and the Court should reject her invitation to do so.  The Important Disclosures state Navy Federal will assess "[a] fee … for each returned debit item," making the trigger for the NSF fee the "return" of the debit item, not the end purpose of the debit item (e.g., the insurance bill). Compl., Ex. A at 4.

Navy Federal's plain reading of the Important Disclosures does not take "item" out of the contract, as Ms. Lambert claims.  *See* Opp. at 15-16.  Rather, "debit item," read in the context of the Important Disclosures as a whole, means "an ACH debit transaction or presentment—i.e., an ACH debit request for payment."  Mot. at 17; *see also id.* at 18 ("debit item" means an "ACH debit requested by an Originator for payment").  Ms. Lambert agrees an "item" is a "payment request" or an "instruction for payment," Opp. at 3-4; *see also* Compl. ¶ 29, and does not dispute that Mutual of Omaha presented *two* payment requests (i.e., debit items), one on October 16, 2018, and one on October 18, 2018, each of which Navy Federal returned for insufficient funds. Mot. at 20; Opp. at 13.  Thus, under the plain terms of the Important Disclosures, Navy Federal properly issued two NSF fees, one "for each returned debit item."  Compl., Ex. A at 4.

Navy Federal does not claim the Important Disclosures allow "an NSF Fee *each time a debit is attempted*," as Ms. Lambert suggests.  Opp. at 15 (emphasis in original); *see also id.* at 16 (arguing Important Disclosures do not authorize an NSF fee "for each debit merely attempted on the account").  Navy Federal does not advocate for such an interpretation because the Important Disclosures do not allow for an NSF fee every time an Originator (Mutual of Omaha) initiates a debit item—they allow for an NSF "for each *returned* debit item," as occurred here on October 16 and 18, 2018.  Compl., Ex. A at 4 (emphasis added); *see also* Mot. at 16-18

(Important Disclosures allow an NSF fee "for each returned debit item," not each debit item submitted, regardless whether the item is returned).  Ms. Lambert's attempt to contort Navy Federal's arguments and contract terms lacks merit.

In contrast, Ms. Lambert achieves her understanding of "item"—which she admits "is undefined in the contract," Opp. at 17—only by "[s]et[ting] aside" the contract terms "returned debit."  *Id.* at 15.  Based on her interpretive gymnastics—and her unsupported blanket assertion that "item" "is routinely used in banking contexts to refer to all iterations of, or attempts at executing, a payment or deposit on an account"—she asks the Court to write a definition of "item" into the contract that is not there.  Opp. at 17; *see also id.* at 4 (concluding "[e]ven if NFCU reprocesses an instruction for payment, the underlying payment request is still the same 'item' or transaction") & 18 (arguing "item … reasonably means all iterations of a given payment attempt").  But the Court must "construe the contract made by the parties, not … make a contract for them," *Wilson v. Holyfield*, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984), and Ms. Lambert cannot inject ambiguity into the plain terms of the contract by argument of counsel.  "Contracts are not rendered ambiguous merely because the parties disagree as to the meaning of the language employed by them in expressing their agreement," *id.*, and "courts must not strain to find ambiguities."  *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 636 (4th Cir. 2005).[5]  In any event, even if an "item" were to mean one underlying transaction, Ms. Lambert offers no plain-language reason why that "item" could not be presented and returned more than once, i.e., each time the RDFI (Navy Federal) returned it for insufficient funds, triggering the NSF fee for each return.[6]

---

[5] Ms. Lambert's out of jurisdiction contractual ambiguity cases have no application here.  *See* Opp. at 19.  None of those cases interpret the provision at issue here, and Ms. Lambert admits her interpretation requires the Court to "set aside" operative contract terms ("returned debit").
[6] Ms. Lambert's argument that the Important Disclosures only use the term "item" to mean one

Nor does *Morris v. Bank of Am., N.A.*, 2019 WL 1274298, *2 (W.D.N.C. 2019), save Ms. Lambert's claims. *See* Opp. at 19. Ms. Lambert asserts the *Morris* court considered "claims identical to the claims in the instant matter," *id.*, but she cannot contend the *Morris* court construed the phrase "each returned debit item" under Virginia law. Further, *Morris* is not binding, *Booker v. S. Car. Dep't of Corrections*, 855 F.3d 533, 538 n.1 (4th Cir. 2017), and the court in *Morris* failed to engage in any analysis of the contract at issue there, making *Morris* unpersuasive and inapplicable, *see* 2019 WL 1274298, at *2.

The words of the Important Disclosures allow Navy Federal to do what it did here—assess an NSF fee "for each returned debit item"—and the Court should dismiss Ms. Lambert's contract claims.

### 2. Navy Federal Did Not Breach the Duty of Good Faith and Fair Dealing.

The duty of good faith and fair dealing cannot undercut contractual rights, and the exercise of accrued contractual rights is not an exercise of discretion subject to the duty of good faith and fair dealing. Mot. at 20-21. As a result, charging an authorized fee cannot violate the duty of good faith and fair dealing. Ms. Lambert's response ignores the distinction between an actionable exercise of *discretion* and a non-actionable exercise of *accrued contractual rights*, and simply concludes that Navy Federal exercised actionable discretion. Opp. at 21-23. But Virginia courts "explicitly reject[] attempts to characterize the decision whether to exercise an accrued right as a matter of 'contractual discretion.'" *Stoney Glen LLC v. S. Bank & Trust Co.*, 944 F. Supp. 2d 460, 468 (E.D. Va. 2013). Here, Navy Federal did *not* exercise contractual discretion but rather an accrued right based on the undisputed, objective fact that Ms. Lambert's

---

underlying transaction is wrong. Opp. at 17-18 & n. 10. The first bullet point in her footnote 10 confirms that each of Mutual of Omaha's debits was a separate "item," because the contract language she quotes identifies "Automated Clearing House (ACH) debits" as separate "items." *Id.*

account had insufficient funds when Mutual of Omaha submitted two debit items and as a result, Navy Federal returned each debit item for insufficient funds. *See* Mot. at 22-24; *Stoney Glen*, 944 F. Supp. 2d at 469 (exercise of an accrued right is not discretionary when right accrues based on "the occurrence of an objective, undisputed fact").

That the contract says "[a] fee may be assessed … for each returned debit item" does not change this outcome. *See* Opp. at 21. A party can *always* refrain from exercising a contractual right; the fact it chooses not to do so does not transform its choice into an act of discretion. *See* Mot. at 22-23 (collecting cases). That Navy Federal reserves the right to ***not*** charge an NSF fee—if, for example, a member uses Navy Federal's dispute-resolution process and receives a waiver—cannot give rise to a breach of the duty of good faith and fair dealing. *Id.* Ms. Lambert makes no effort to respond to Navy Federal's cases on this point, and her cases involving banks exercising sole discretion to reorder items posted to checking accounts have no application here.[7]

Ms. Lambert, however, argues "NFCU abused its discretion by interpreting the terms 'item' or 'returned debit item' in a strained and unreasonable manner that allowed it to assess more fees on Ms. Lambert … than it should have." Opp. at 21.[8] But she cannot transform Navy Federal's exercise of accrued contract rights into an exercise of discretion by simply disagreeing with Navy Federal's plain language interpretation of the contract. The duty of good faith and fair dealing cannot "rewrit[e] an unambiguous contract in order to create terms that do not exist,"

---

[7] *See* Opp. at 20-21 & n. 11 (citing *In re HSBC Bank, USA, N.A.*, 1 F. Supp. 3d 34, 51-52 (E.D.N.Y. 2014); *Gutierrez v. Wells Fargo & Co.*, 622 F. Supp. 2d 946, 954 (N.D. Cal. 2009) (contract language allowing bank to post items to checking accounts "in any order the bank chooses" "does nothing more than give discretion to the bank"); *White v. Wachovia Bank, N.A.*, 563 F. Supp. 2d 1358, 1364 (N.D. Ga. 2008) ("The relevant paragraphs of the Deposit Agreement outline how Wachovia will carry out its obligation to pay checks or other withdrawals from an account, and confer discretion to Wachovia as to the manner of performing this obligation."); *In re Checking Account Overdraft Litig.*, 2013 WL 5774287, *7 (S.D. Fla. 2013) (giving bank discretion to post items to checking accounts "in any order we choose")).

[8] The only way a consumer with Navy Federal's overdraft protection service receives an NSF fee is if she has *already* used her $500 in overdraft protection. *See* Compl., Ex. A at 5.

Mot. at 20 (quoting *McInnis v. BAC Home Loan Servicing, LP*, 2012 WL 383590, *8 (E.D. Va. 2012)), yet Ms. Lambert's proposed contract interpretation does just that, because she admittedly rests her interpretation on deleting the terms "returned debit" from the Important Disclosures, Opp. at 15.  Under the plain meaning of the *actual* words of the Important Disclosures, Navy Federal simply exercised its right under the contract when it assessed two NSF fees for two returned debit items.  "[A] party does not violate the obligation to act in good faith by 'enforcing a contractual right.'"  Mot. at 20 (quoting *Albayero v. Wells Fargo Bank, N.A.*, 2011 WL 4748341, *6 (E.D. Va. 2011)).[9]

### C.     Ms. Lambert's UDTPA Claim Fails.

#### 1.     The Parties' Contractual Choice of Law Controls.

Virginia law applies broad contractual choice-of-law provisions to "contract-related tort claims," Mot. at 25 (citing *Zaklit v. Glob. Linguistic Sols., LLC*, 2014 WL 3109804, *9 (E.D. Va. 2014)), and Ms. Lambert's North Carolina UDTPA claim is such a claim.  A contrary result would add "complexity and [make] the outcome of disputes less predictable, the type of eventuality that a sound commercial law should not seek to promote."  *Pyott-Boone Elecs. Inc. v. IRR Trust for Donald L. Fetterolf Dated Dec. 9, 1997*, 918 F. Supp. 3d 532, 544 (E.D. Va. 2013).

Ms. Lambert's conclusion in opposition that "contractual choice of law clauses are interpreted narrowly" lacks support.  "[U]nder Virginia law, choice of law clauses generally encompass contract-related tort claims."  *Cyberlock Consulting, Inc. v. Info Experts, Inc.*, 876 F. Supp. 2d 672, 678 n.3 (E.D. Va. 2012).  And *LTD Mgmt. Co. v. Holiday Hosp. Franchising, Inc.*,

---

[9] Ms. Lambert effectively concedes she does not allege facts plausibly showing Navy Federal acted dishonestly, and therefore cannot base any duty of good faith and fair dealing claim on an alleged exercise of contractual rights.  *Compare Stoney Glen*, 944 F. Supp. 2d at 466-69 ("[W]here a party has a clear contract right, even if its exercise would arguably be arbitrary, that party is only forbidden from acting dishonestly."), *and* Mot. at 21 ("Ms. Lambert alleges no such facts" plausibly showing dishonesty), *with* Opp. at 22 (arguing only bad faith, not dishonesty).

2008 WL 7281926, *10 (E.D. Va. 2008), on which Ms. Lambert relies, *agrees*.  In fact, in *LTD* the court emphasized that "Virginia gives contractual choice of law provisions full effect absent unusual circumstances," and reiterated the settled rule that "if a choice of law provision is sufficiently broad, a court should apply the provision to encompass contract-related tort claims as well."  *Id.*  Applying those principles, the court found the choice-of-law provision to be "narrow" because it was expressly limited to the parties' agreement—not their relationship more generally. *Id.* ("[The Agreement] shall be governed and construed under, and in accordance with the laws and decisions….of the State of Georgia." (alteration in original)).

Ms. Lambert's choice-of-law provision, in contrast, applies to "Navy Federal *accounts*" broadly, not just to the interpretation or application of the Important Disclosures themselves. Compl., Ex. A at 7 (emphasis added).  Courts in this district have held that similarly broad choice-of-law provisions encompass contract-related tort claims, and this Court should do so here, too.  *Freedman v. Am. Online, Inc.*, 325 F. Supp. 2d 638, 653 (E.D. Va. 2004) (Virginia's laws "govern this Agreement and your membership"); *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 624 (4th Cir. 1999) (Virginia law governs "[t]his Agreement and the rights and obligations of the parties hereunder …. including all matters of construction, validity and performance."); *Run Them Sweet, LLC v. CPA Global Ltd.*, 224 F. Supp. 3d 462, 466 (E.D. Va. 2016) ("[T]he Agreement's conditions shall be 'governed and construed in accordance with' Virginia law."); *Hitachi*, 166 F.3dat 628 (where "a choice of law clause in the contract is sufficiently broad to encompass contract-related tort claims …. courts have honored the intent of the parties to choose the applicable law); *see also* Mot. at 25-27.[10]

---

[10] Ms. Lambert makes no attempt to distinguish *Run Them Sweet*.  There, the Court disagreed with *LTD*'s conclusion that the phrase "governed and construed" was a narrow provision, emphasizing both terms needed be given independent meaning, and the term "governed" is exceptionally broad.  *See* 224 F. Supp. 3d at 466 & n.3 (distinguishing *LTD Mgmt.*).

Further, Ms. Lambert bases her UDTPA claim *on the exact same allegations as her contract claim.* *Compare* Compl. ¶ 73 ("[Navy Federal] breached the terms of its contract with consumers by charging multiple NSF fees on the same transaction."), *with* Compl. ¶ 82 ("[C]harging multiple NSF fees on a single transaction is both unfair and deceptive …."); *see also* ¶¶ 64.D, 80-82 (asserting UDTPA claim based on Navy Federal's "assessment of NSF Fees," "imposition of NSF Fees," and practice of "charging multiple NSF Fees"); Compl., Ex. A at 4 ("A fee may be assessed … for each returned debit item.").  Where, as here, tort claims are "based on precisely the same facts as those on which the breach-of-contract claim is based," courts in this district find the claims to be contract-related tort claims subject to the parties' contractual choice of law.  *Run Them Sweet*, 224 F. Supp. 3d at 467-68; *Hitachi*, 166 F.3d at 628 ("[R]ecognizing the close relationship of the tort claims to the contract, this Court will apply Virginia law to Hitachi's fraud claims."); *Freedman* 325 F. Supp. 2d at 653-54 (applying Virginia law where "plaintiff's [Connecticut] UTPA claim effectively puts this provision of the Agreement at issue").  Ms. Lambert's case involving a tort claim based on allegations of duties *independent of the contract* therefore has no bearing here.  *See* Opp. at 24-25 (citing *Metro Mail Servs., Inc. v. Pitney Bowes, Inc.*, 2017 WL 1230848, *5 (E.D. Va. 2017) (declining to applying Connecticut choice-of-law provision to Connecticut unfair trade practices act claim where plaintiff based the claim on duties independent of the contract)).[11]

Ms. Lambert attempts to avoid the parties' selection of Virginia law by appealing to public policy, conceding she cannot bring her duplicative contract-based statutory claim under Virginia law.  Opp. at 25.  But her claim that the North Carolina UDTPA has "public policy

---

[11] Because application of Virginia law to Ms. Lambert's UDTPA claim is "settled by the contract," it makes no difference whether her "account was maintained in North Carolina and she was injured in North Carolina"; Virginia law applies under the terms of her contract, alone.  *See* Opp. at 24-25 (*lex loci delicti* applies only if choice of law is not "settled by the contract").

justification" and thus is a "fundamental policy" of North Carolina does not make it so.  *Id.*  If

that were the test, *every* unfair practices act would be inviolate, yet courts regularly apply

contractual choice-of-law provisions to bar assertion of state-law unfair trade practices claims,

including North Carolina UDTPA claims.  *Run Them Sweet*, 224 F. Supp. 3d at 464, 468

(dismissing California unfair trade practices claim); *Freedman*, 325 F. Supp. 2d at 653-54

(dismissing Connecticut UTPA claim); *Canon U.S.A., Inc. v. Cavin's Bus. Sols., Inc.*, 208 F.

Supp. 3d 494, 504-05 (E.D.N.Y. 2016) (dismissing North Carolina UDTPA claim based on New

York law selection); *G.P.P., Inc. v. Guardian Prot. Prod., Inc.*, 2015 WL 3992878, *18 (E.D.

Cal. 2015) (dismissing North Carolina UDTPA claim based on California law selection).

      Indeed, in *Canon*, when dismissing the plaintiff's North Carolina UDTPA claim due to a

New York choice-of-law provision, the court rejected the same argument Ms. Lambert advances

here—that a consumer protection statute necessarily embodies a "fundamental policy" that

cannot be displaced by a choice-of-law provision:

> Plaintiff acknowledges that New York has its own analogous statute, New York
> General Business Law § 349, and admits that it does not bring a New York
> consumer protection claim because the statute does not extend to the misconduct
> alleged here. In the Court's view, the enforcement of a choice-of-law provision
> that would apply a narrower consumer protection or deceptive trade practices
> statute does not amount to a violation of a fundamental public policy of another,
> more interested jurisdiction.

208 F. Supp. 3d at 505; *see also Bassett Seamless Guttering, Inc. v. GutterGuard, LLC*, 2006

WL 156874, *6 (M.D.N.C. 2006) ("[A] choice of law provision is not fundamentally unfair

simply because it denies a treble damages remedy otherwise available in a party's home state.").

      In any event, the only authority Ms. Lambert advances—*Dealers Supply Co. v. Cheil

Indus.*, 348 F. Supp. 2d 579, 586 (M.D.N.C. 2004), does not establish North Carolina's UDTPA

as a "fundamental policy" that cannot be displaced by a choice-of-law provision.  The Court

must "begin with the proposition that not every statutory provision constitutes a fundamental

policy of a state," and examine the statutory language, relevant court decisions, and legislative history. *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 607 (4th Cir. 2004). Whether state law allows parties to waive its application deserves significant weight. *See id.*

Here, not only does the North Carolina UDTPA contain no anti-waiver provision, but also the North Carolina Supreme Court has held that parties *can waive* their rights under the UDTPA. In the Court's words: "We see no reason why a plaintiff in an unfair practices claim may not waive the right to recover treble damages and elect instead, for reasons satisfactory to the plaintiff, to recover untrebled compensatory damages." *United Labs, Inc. v. Kuykendall*, 335 N.C. 183, 194, 437 S.E.2d 374, 381 (1993); *see also Ussery v. Branch Banking & Trust Co.*, 368 N.C. 325, 338-39 & n.8, 777 S.E.2d 272, 281 (2015) (plaintiff validly waived claims—including claims under the North Carolina UDTPA); *G.P.P., Inc.*, 2015 WL 3992878, at *18 ("The UDTPA is a North Carolina statute, and the parties do not identify a choice-of-law exclusion or waiver provision in the statute."). Because North Carolina courts allow parties to waive the UDTPA, the statute is not such a fundamental policy of North Carolina that this Court can set aside the parties' clear selection of Virginia law.

### 2.  Compliance with the Important Disclosures Is Not Unfair or Deceptive.

Navy Federal did not act unfairly or deceptively when it complied with the plain terms of the Important Disclosures. *See* Mot. at 27-28. Ms. Lambert argues *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1326, rejected Navy Federal's "exact argument that it somehow cured its unfair and deceptive practices by the language included in its contract." Opp. at 30. In fact, *In re Checking Account* allowed a North Carolina UDTPA claim to proceed despite an argument that the challenged conduct was fully disclosed because the court had "already held that Defendants' alleged conduct ***was not*** expressly authorized by the contract."

16

*Id.* (emphasis added).  Here, however, the Important Disclosures expressly authorized Navy Federal to assess "[a] fee … for each returned debit item," as it did on October 16, 2018, when Mutual of Omaha submitted a debit item and Navy returned it for insufficient funds, and on October 18, 2018, when Mutual of Omaha submitted another debit item and Navy returned it for insufficient funds.  That conduct is not unfair or deceptive.  *E.g. Perry v. Meredith Corp.,* 77 Fed. App'x 128, 131 (4th Cir. 2003) (affirming dismissal of UDTPA claim where plaintiff failed to allege defendants acted "inconsistent with … the express terms" of the parties' contract).

### 3.    Breach of Contract Allegations Do Not State a UDTPA Claim.

Further, Ms. Lambert cannot recover under the North Carolina UDTPA for a "mere breach of contract, even if intentional."  *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998); *see also Ellis v. Louisiana-Pac. Corp.*, 699 F.3d 778, 787 (4th Cir. 2012) ("[I]t is unlikely that an independent tort could arise in the course of contractual performance, since those sorts of claims are most appropriately addressed by asking simply whether a party adequately fulfilled its contractual obligations."); *see also* Mot. at 28-29 (collecting cases).  Yet her claim is just that—a mere breach of contract seeking treble damages and attorney fees, with no allegations of aggravating circumstances.  *Id*. at 28-30.

Paragraphs 27-50 of her Complaint—which she claims allege "substantially aggravating circumstances," Opp. at 27—allege only a breach of contract.  The heading of that section reads "The Imposition of Multiple NSF Fees on a Single Transaction Violates NFCU's Express Promises and Representations."  Compl. ¶ 27.  From paragraphs 27 through 31, Ms. Lambert alleges Navy Federal does not define "item or transaction," indicates "NSF Fees will only be assessed once per transaction or item," and states "it will charge $29 per item or transaction that is returned."  Ms. Lambert then reviews the terms of the Exhibits she believes support her argument, *id.* ¶¶ 32-35, alleges her interpretation of the Important Disclosures, *id.* ¶¶ 36-41, and

culminates with her allegation of breach: "NFCU *breached the contract* when it charged more than one NSF Fee per item." *Id.* ¶ 42 (emphasis added). Ms. Lambert follows those allegations by asserting what she believes "[r]easonable customers understand" the contract to mean, *id.* ¶¶ 43-45, and concludes by comparing Navy Federal's Important Disclosures to those of other institutions, *id.* ¶¶ 46-50. In short, Ms. Lambert's UDTPA allegations simply recast her breach of contract ones, thereby taking her claim out of the UDTPA. As a result *Broussard* and *Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000), which bar plaintiffs from transforming contract claims into ones for UDTPA violations, apply with full force.[12]

Nor does it matter that the Important Disclosures constitute an adhesion contract. *See* Opp. at 30. "Virginia adheres to the general rule that: 'The use of a standard form contract between two parties of admittedly unequal bargaining power does not invalidate an otherwise valid contractual provision.'" *Saturn Distr. Corp. v. Williams*, 905 F.2d 719, 726 (4th Cir. 1990); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346-47 (2011) ("[T]he times in which consumer contracts were anything other than adhesive are long past."). Ms. Lambert cannot meet her burden to plead facts plausibly establishing substantial aggravating

---

[12] Ms. Lambert's failure to plead facts plausibly showing substantial aggravating circumstances distinguishes this case from those she cites. *See* Opp. at 29 (citing *Martin v. Bimbo Foods Bakeries Dist., Inc.*, 2014 WL 3487618, *4 (E.D.N.C. 2014) (plaintiff alleged defendant "pretextually terminat[ed] the agreement"); *Varnell, Struck & Assocs., Inc. v. Lowe's Cos.*, 2008 WL 1745880, *9 (W.D.N.C. 2008) (same); *Deerborne Cottages, LLC v. First Bank*, 2012 WL 1835240, *6 (W.D.N.C. 2012) (affirmative misrepresentations discrete from the subject matter of the contract); *Insteel Indus. Inc. v. Costanza Contracting Co., Inc.*, 276 F. Supp. 2d 479, 488 (E.D. Va. 2003) (same); *New Hickory Pizza, Inc. v. TIG Ins. Co.*, 2017 WL 3840278, *11-*12 (W.D.N.C. 2017) (UDTPA violations based on underlying violations of North Carolina's Unfair Claim Settlement Practices Act); *Biltmore Ave. Condo. Ass'n, Inc. v. Hanover Am. Ins. Co.*, 2016 WL 406463, *2 (W.D.N.C. 2016) (affirmative misstatements inducing a party to enter a contract); *Faucette v. 6303 Carmel Rd., LLC*, 242 N.C. App. 267, 276, 775 S.E.2d 316, 324 (2015) (conversion); *Hanes v. Barar*, 219 N.C. App. 400, 2012 WL 707110, *1, *5 (2012) (unpub.) (wrongful refusal to accept plaintiff's tender of payments then declaring plaintiff in breach and disabling her vehicle)). None of these cases aids Ms. Lambert, who bases her UDTPA claim on allegations identical to her contract claim, without aggravating circumstances. *Compare* Compl. ¶ 73, *with* Compl. ¶ 82.

circumstances (including "inequitable assertion of power") by simply concluding the Important Disclosures are "adhesive." *See Dillon v. Leazer Grp., Inc.*, -- F. Supp. 3d ---, 2019 WL 1245784, *8 (E.D.N.C. 2019) (dismissing UDTPA claim despite allegation that defendant "exercised their superior bargaining power to induce [plaintiffs] to enter into a one-sided and unconscionable contract of adhesion"); *Varnell, Struck & Assocs., Inc*, 2008 WL 1745880, at *8 ("[T]hat the Defendant may have used its unequal bargaining position to force the Plaintiff to accept the clauses does not constitute an unfair act or practice under the UDTPA." (citing *Sara Lee Corp. v. Quality Mfg.*, 201 F. Supp. 2d 608, 617 (M.D.N.C. 2002) (dismissing UDTPA claims despite allegations of "superior position")). *Sara Lee.*, 201 F. Supp. 2d at 616.

    **4.    Factual Development Will Not Salvage Ms. Lambert's UDTPA Claim.**

    Ms. Lambert concedes that whether an action violates the UDTPA is a question of law, but suggests the Court should allow further factual development before deciding the issue.  Opp. at 27.  But she does not identify *what* factual development could somehow render Navy Federal's performance of the parties' contract unfair or deceptive—and nor could she, for the express terms of the Important Disclosures said Navy Federal could do what it did.  Nor has Ms. Lambert pled facts plausibly alleging any aggravating circumstances, as is her burden in stating a UDTPA claim.  That is fatal to her claim, and requires dismissal under Rule 12(b)(6).  *See Van Leuvan v. Cushman & Wakefield US, Inc.*, 2019 WL 123893, *4 (E.D.N.C. 2019) (granting motion to dismiss UDTPA claim where plaintiff had "not plausibly alleged any substantial aggravating circumstances"); *Carolina Rest. Grp., Inc. v. PepsiCo Sales, Inc.*, 2015 WL 4250395, *6 (W.D.N.C. 2015) (dismissing UDTPA despite "conclusory allegation that [defendant's] conduct … was 'an inequitable assertion of power'"); *Sullivan v. Lab. Corp. of Am. Holdings*, 2018 WL 1586471, *4-*5 (M.D.N.C. 2018) (dismissing where plaintiff failed to "plausibly state a claim under the act").

### III.    CONCLUSION

The Court should grant Navy Federal's Motion to Dismiss with prejudice because federal law preempts Ms. Lambert's claims, because Navy Federal properly charged her two NSF fees for two returned debit items (as her contract with Navy Federal permits), and because the parties' selection of Virginia law bars her North Carolina claims (which claims fail in any event).

Dated:  April 22, 2019.                  Respectfully submitted,


By  s/ D. Bradford Hardin, Jr.
D. Bradford Hardin, Jr., VSB #76812
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Ave. NW, Ste. 800
Washington, DC  20006
Telephone: (202) 973-4238
Facsimile: (503) 973-4438
bradfordhardin@dwt.com

Frederick B. Burnside, *Admitted Pro Hac Vice*
Rebecca J. Francis, *Admitted Pro Hac Vice*
DAVIS WRIGHT TREMAINE LLP
920 Fifth Ave., Ste. 3300
Seattle, WA  98104
Telephone: (2067) 622-3150
Facsimile: (206) 757-8285
fredburnside@dwt.com
rebeccafrancis@dwt.com

Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system.  All other parties (if any) shall be served in accordance with the Federal Rules of Civil Procedure.

By  s/ D. Bradford Hardin, Jr.
    D. Bradford Hardin, Jr., VSB #76812
    DAVIS WRIGHT TREMAINE LLP
    1919 Pennsylvania Ave. NW, Ste. 800
    Washington, DC  20006
    Telephone: (202) 973-4238
    Facsimile: (503) 973-4438
    bradfordhardin@dwt.com

    Attorneys for Defendant