IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| RUBY LAMBERT, individually and on behalf of all others similarly situated, | |
| *Plaintiff,* | Civil No. 1:19-cv-103-LO-MSN |
| v. | Hon. Liam O'Grady |
| NAVY FEDERAL CREDIT UNION, | |
| *Defendant.* | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant's Motion to Dismiss for Failure to State a Claim (Dkt. 19). The Motion is fully briefed, and the Court heard oral argument on May 24, 2019. For the reasons stated below, and for good cause shown, Defendant's Motion to Dismiss for Failure to State a Claim (Dkt. 19) is hereby **GRANTED**.

### I. BACKGROUND

Plaintiff Ruby Lambert alleges that Defendant Navy Federal Credit Union charges multiple nonsufficient fund fees for multiple attempts to process a single payment request in violation of contractual language implying that only a single nonsufficient fund fee would ever be charged for a payment request, no matter how many times that payment request is declined for nonsufficient funds.

Plaintiff's contract with Navy Federal states that Navy Federal "may" assess "[a] fee" "for each returned debit item." Navy Fed. Credit Union Important Disclosures (hereinafter "Important Disclosures") at 4. Plaintiff's insurer, Mutual of Omaha, attempted to automatically

deduct Plaintiff's insurance payment from her Navy Federal account (with Plaintiff's prior authorization) using an Automated Clearing House ("ACH") debit request. That request was rejected due to insufficient funds, and Plaintiff was charged a nonsufficient fund fee. Mutual of Omaha again submitted an ACH debit request for the same payment two days later. Navy Federal again rejected the request due to insufficient funds and charged Plaintiff with another nonsufficient fund fee. Plaintiff challenges Navy Federal's assessment of the second nonsufficient fund fee, as she views Mutual of Omaha's original payment request and subsequent reprocessing attempt as involving the same "debit item." Plaintiff has brought two claims against Navy Federal: (1) breach of contract and the covenant of good faith and fair dealing under Virginia law, and (2) violation of North Carolina's Unfair and Deceptive Trade Practices Act.

Defendant Navy Federal Credit Union has moved to dismiss both claims on preemption grounds and for failure to state a valid claim.

## II. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A motion to dismiss pursuant to Rule 12(b)(6) must be considered in combination with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While "detailed factual allegations" are not required, Rule 8 does demand that a plaintiff provide more than mere labels and conclusions stating that the plaintiff is entitled to relief. *Id.* In evaluating whether a complaint states a plausible claim to relief, "although a court must accept as true all factual allegations contained in [the] complaint,

such deference is not accorded to legal conclusions stated therein." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012).

## III. ANALYSIS

### A. Plaintiff's Claims Are Partially Preempted.

Defendant Navy Federal Credit Union argues Plaintiff's claims are preempted by the National Credit Union Administration's ("NCUA") regulations implementing the Federal Credit Union Act ("FCUA") and Truth in Savings Act ("TISA"). State law claims may be preempted by Congress "either expressly through the statute or regulation's language or impliedly through its aim and structure." *Whittington v. Mobiloil Fed. Credit Union*, 2017 WL 6988193, at *6 (E.D. Tex. Sept. 14, 2017) (citing *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008)).

The relevant implementing regulations of the FCUA and TISA are contained in 12 C.F.R. parts 701 and 707, respectively. The FCUA's implementing regulations state:

> A Federal credit union may, consistent with this section, parts 707 and 740 of this subchapter, other federal law, *and its contractual obligations*, determine the types of fees or charges and other matters affecting the opening, maintaining and closing of a share, share draft or share certificate account. *State laws regulating such activities are not applicable to federal credit unions.*

12 C.F.R. § 701.35(c) (emphasis added). By its terms, § 701.35 "expressly provides that [federal credit unions] are authorized to determine, *free from state regulation*, the types of *disclosures, fees or charges*" for their account offerings. 49 Fed. Reg. 46552-01, 46552 (Nov. 27, 1984) (emphasis added); *see also* 50 Fed. Reg. 4636-01, 4636 (Feb. 1, 1985) ("This final rule provides that policies with respect to disclosures, fees or charges . . . shall be determined by [a federal credit union's] member-elected board of directors, free from regulatory restrictions."). Similarly, the TISA implementing regulations require federal credit unions to provide disclosures regarding "[t]he amount of any fee that may be imposed in connection with the account . . . and the conditions under which the fee may be imposed," 12 C.F.R. § 707.4(b)(4), and expressly

3

preempt any "[s]tate law requirements that are *inconsistent* with the requirements of the TISA and [its implementing regulations]," 12 C.F.R. § 707.1(d) (emphasis added).

Consistent with the language and purpose of these regulations, it is well established that state law claims regarding a federal credit union's failure to disclose certain fee practices or any perceived unfairness in the fee practices themselves are preempted. *See, e.g.*, *Gutierrez v. Wells Fargo Bank, N.A.*, 704 F.3d 712, 725 (9th Cir. 2012) (finding that claims alleging the defendant's practice of posting debit-card transactions in high-to-low order was unfair were preempted because they would "prevent[] or significantly interfere[] with a national bank's federally authorized power to choose a posting order"); *id.* at 726 (finding failure to disclose claim against a bank preempted because "[i]mposing liability for the bank's failure to sufficiently disclose its posting method leads to the same result as mandating specific disclosures"); *Whittington*, 2017 WL 6988193, at *9 (finding that the plaintiff's "attempts to use a state consumer law to dictate to a federal credit union what fees it may charge and how it may charge them" were preempted); *id.* at *10 ("[A]ny claims based on [Mobiloil Federal Credit Union's] alleged failure to make certain disclosures are preempted.").

On the other hand, it is equally well established that true breach of contract and affirmative misrepresentation claims are not federally preempted, even if the result of those claims may affect a federal credit union's fee disclosures. *See, e.g.*, *Gutierrez*, 704 F.3d at 726 (finding that the plaintiff's claims "based on Wells Fargo's misleading statements about its posting method" under the fraudulent prong of California's Unfair Competition Law were not preempted because that law "does not impose disclosure requirements but merely prohibits statements that are likely to mislead the public"); *Whittington*, 2017 WL 6988193, at *10–11 (finding a claim alleging a credit union affirmatively misrepresented that it assesses overdraft

4

fees only when a customer has overdrawn his or her account not preempted); *In re TD Bank, N.A.*, 150 F. Supp. 3d 593, 610 (D.S.C. 2015) ("[B]reach of contract claims *not* premised on unfairness or bad faith theories but on genuine disputes about the terms of the contract and the parties' compliance therewith," are not preempted because "their impact on the bank's exercise of its powers is only *incidental*." (emphasis in original)); *Hanjy v. Arvest Bank*, 94 F. Supp. 3d 1012, 1025 (E.D. Ark. 2015) (finding that the plaintiffs' breach of contract and breach of the implied covenant of good faith and fair dealing claims were not preempted because the plaintiffs merely sought "to hold [the defendant bank] to the terms of its contracts"); *Murr v. Capital One Bank (USA), N.A.*, 28 F. Supp. 3d 575, 583 (E.D. Va. 2014) (rejecting the argument that the plaintiff's fraud claim was preempted by the National Banking Act because holding the defendant liable for fraud under state law would be "tantamount to imposing greater disclosure requirements").

Here, Plaintiff alleges that Navy Federal does not assess fees as disclosed in its contract and that its actual fee assessment practice is unfair. To the extent Plaintiff's claims allege only that Navy Federal has failed to comply with the express terms of the parties' contract or affirmatively misrepresented its fee practices, Plaintiff's claims are not preempted under the affirmative misrepresentation and true breach of contract line of cases. While federal credit unions have the discretion to determine fee practices and disclosures free from state regulation inconsistent with the FCUA, the TISA, and their implementing regulations, federal credit unions must still comply with the terms of their contracts related to fee practices and not affirmatively misrepresent those practices. To the extent Plaintiff challenges a perceived failure to disclose, the specific language used in the disclosure, or the fairness of the fee practice itself, however, those arguments are clearly preempted.

5

## B. The Complaint Fails to State a Claim for Breach of Contract.

Although Plaintiff's breach of contract claim is not entirely preempted, the Court finds that it must be dismissed for failure to state a claim because the contract unambiguously gives Navy Federal the contractual right to impose fees in the way that it did.

Contracts must be construed as a whole without placing undue emphasis on isolated terms, *Erie Ins. Exch. v. EPC MD 15, LLC*, 297 Va. 21, 822 S.E.2d 351, 356 (2019), or adding additional terms, *Squire v. Va. Hous. Dev. Auth.*, 287 Va. 507, 758 S.E.2d 55, 60 (2014). When the terms of a contract are "clear and unambiguous," courts are required to construe those terms "according to their plain meaning." *Golding v. Floyd*, 261 Va. 190, 192, 539 S.E.2d 745, 736 (2001). "The fact that one may hypothesize opposing interpretations of the same contractual provision does not necessarily render the contract ambiguous because . . . a contract is not ambiguous simply because the parties to the contract disagree about the meaning of its language." *Erie*, 822 S.E.2d at 356 (internal quotation marks omitted) (quoting *Babcock & Wilcox Co. v. Areva NP, Inc.*, 292 Va. 165, 179, 788 S.E.2d 237 (2016)). Instead, "conflicting interpretations reveal an ambiguity only where they are reasonable." *Id.* at 355. "If the text of the agreement is unambiguous, then the court is without authority to resort to extrinsic evidence," such as public confusion, "in interpreting its meaning." *Schneider v. Cont'l Cas. Co.*, 989 F.2d 728, 732 (4th Cir. 1993).

While Plaintiff disagrees with Navy Federal's interpretation of "[a] fee may be assessed . . . for each returned debit item," the Court agrees with Navy Federal that the provision is unambiguous and matches Navy Federal's practice.

Both parties agree that an "item" is a request or invitation for payment. In disclosing the order in which transactions are posted to a member's account, the contract lists all of the following as types of "items": "all money coming in (credits, deposits, etc.); ATM withdrawals;

6

debit card transactions, also called Point of Sale (POS); *Automated Clearing House (ACH) debits*; and checks written." Important Disclosures at 3 (emphasis added). Thus, it is clear from the contract that ACH debit requests, such as the two submitted by Plaintiff's insurer, qualify as "debit items." The contract also warns Navy Federal Credit Union members that "[a]n ACH debit might be made as a result of an authorization you gave a third party to automatically transfer funds from your account to pay your monthly insurance premium, utility bills, or car payment," *id.* at 9, as happened when Plaintiff's insurer submitted the second request for payment.

Plaintiff argues, however, that two ACH debit requests made by the same merchant, in the same amount, for the same purpose, are the same "debit item." In other words, Plaintiff argues that her insurer merely resubmitted the same "debit item" when it requested payment for the second time, rather a new debit item. In support of her interpretation, Plaintiff analogizes her insurer's requests for payment to a "check[] that you have written but that ha[s] not yet cleared your account," which the disclosures refer to as a single item, *id.* at 5.

Plaintiff's interpretation is unreasonable in light of the contract as a whole. When Plaintiff was charged the initial nonsufficient funds fee, it was because her insurer's request for payment (the "debit item") was returned. The contract specifies that "Navy Federal may *return* debits to the checking account (e.g., an ACH payment) if the amount of the debit exceeds funds available in the checking account" and assess "[a] fee" for the "*returned* debit item." *Id.* at 4 (emphasis added); *see also id.* at 5 ("If we do not pay an overdraft, your transaction will be declined and/or your check/ACH will be *returned*, unpaid." (emphasis added)). Plaintiff's insurer's first ACH debit request was not in the midst of being processed like a "check[] that you have written but that ha[s] not yet cleared your account," but rather was rejected just as a

7

bounced check would be. Navy Federal also did not keep Plaintiff's insurer's unsuccessful first ACH request and attempt to reprocess the request on its own. It returned the request and waited for Plaintiff's insurer to submit another request for payment, which Navy Federal was then obligated to process.

If a check was rejected and a second check was submitted by the same merchant, in the same amount, for the same purpose, and the second check was also rejected, the contract clearly gives Navy Federal Credit Union the right to charge another fee. *Id.* at 4 ("A fee will be assessed . . . for each refused check."). The analogous provision for debit items therefore also gives Navy Federal the right to charge a fee for each presentment of an ACH electronic request for payment, even if the request is by the same merchant, in the same amount, and for the same purpose.[1] Thus, rather than support Plaintiff's position, the contract's check provisions support Navy Federal's interpretation of the contract and position that the contract is unambiguous. When Plaintiff's insurer "re-presented" the request for payment, it was a new ACH debit item – just as a second check would be a new check even if it was by the same merchant, in the same amount, for the same purpose – and was therefore eligible for a fee when it was returned for nonsufficient funds.

Further, the sentence in dispute must be read in conjunction with the sentence immediately before it. The first sentence states: "Navy Federal may return debits to the checking account (e.g., an ACH payment) if the amount of the debit exceeds funds available in the checking account." *Id.* at 4. The next sentence warns: "A fee may be assessed in the amount shown on Navy Federal's current Schedule of Fees and Charges for each returned debit item."

---

[1] The use of "refused" before check but "returned" before "debit item" is inconsequential. When a check is refused, it may not always be returned. For example, Navy Federal Credit Union may not mail a bounced check back to the member or payment requester. By contrast, the parties have represented that when electronic transactions, such an ACH debits, are rejected, they are returned via the same electronic transmission method, such as the ACH network.

8

*Id.* (italics removed). Taken together, these sentences clearly provide that Navy Federal may return a debit item, such as an ACH debit, if there is not enough money in the account (the first sentence), and, if there is a return, Navy Federal may charge the member a fee for that returned debit transaction (the second sentence).

Plaintiff disagrees, arguing that "returned debit *item*" in the second sentence must mean something different than "returned debit" in the first sentence. At the hearing, Plaintiff conceded that without the inclusion of "item" in the second sentence, Plaintiff would not have a claim. Yet, the Court finds that the use of "item" does not render the sentence ambiguous. As noted above, other provisions of the contract demonstrate that an "item" includes various types of transactions that would either add or subtract money from the account. The contract merely uses "debit" as an adjective to modify "item," just as "returned" is used as an adjective to modify "debit item." Thus, "debit item" clearly refers to a transaction that attempts to withdraw money from the account, such as an ACH debit request, and the inclusion of "item" in "returned debit item" does not render the contract ambiguous.

In conclusion, when the terms of the contract are read together and in context, the contract unambiguously provides that "each" time Navy Federal Credit Union "returns" a request for payment (a "debit item") for insufficient funds, a nonsufficient fund fee may be assessed without regards to whether the returned debit item was a re-presentment of a previously rejected request. As a result, Navy Federal Credit Union did not breach the contract when it assessed the second nonsufficient fund fee for Plaintiff's insurer's second ACH debit request. Because "[t]he Complaint's allegations make clear that no breach [of contract] occurred," the breach of contract claim must be dismissed for failure to state a claim. *Hanback v. DRHI, Inc.*, 94 F. Supp. 3d 753, 761 (E.D. Va. 2015).

### C. The Complaint Fails to State a Claim for Breach of the Covenant of Good Faith and Fair Dealing.

Plaintiff's breach of the covenant of good faith and fair dealing claim must also be dismissed for similar reasons.

"Implicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance." *In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*, 1 F. Supp. 3d 34, 51 (E.D.N.Y. 2014). The implied covenant prevents a party from exercising "contractual *discretion* in bad faith, even when such discretion is vested solely in that party," but it "does not prevent a party from exercising its explicit contractual *rights*." *Va. Vermiculite, Ltd. v. W.R. Grace & Co.–Conn.*, 156 F.3d 535, 542 (4th Cir. 1998) (emphasis in original). The relevant case law establishes that "(1) where a party has a clear contract right, even if its exercise would arguably be arbitrary, that party is only forbidden from acting dishonestly; (2) but where a party has discretion in performance, that party cannot act arbitrarily or unfairly." *Stoney Glen, LLC v. S. Bank & Trust Co.*, 944 F. Supp. 2d 460, 466 (E.D. Va. 2013) (citations omitted).

Courts have "explicitly rejected attempts to characterize the decision whether to exercise an accrued right as a matter of 'contractual discretion.'" *Id.* at 468. At the same time, however, courts have held that the implied covenant applies where the accrual of a contractual right depends on a party's exercise of contractual discretion rather than on objective facts. *Id.* at 469. In other words, "[a] party to a contract can flip a coin to decide whether to exercise an accrued right, but cannot flip a coin to determine whether a right has accrued." *Id.*

In this case, Navy Federal's right to charge a fee depended on the existence of an objective fact: whether a debit item had been returned for nonsufficient funds. Thus, although the contract stated that Navy Federal "may" rather than "will" assess a fee for each returned debit item, Navy Federal had the contractual right to assess the challenged fee and, unlike in the cases

10

cited by Plaintiff, had not exercised any contractual discretion in bad faith to cause that right to accrue.[2] Plaintiff has also not plausibly alleged that Navy Federal exercised its contractual right to charge the fee dishonestly.

Accordingly, Plaintiffs' breach of the covenant of good faith and fair dealing claim must be dismissed because Navy Federal honestly exercised its contractual *right* to charge Plaintiff a nonsufficient fund fee for her insurer's second request for payment. *Va. Vermiculite*, 156 F.3d at 542 ("[I]t is a basic principle of contract law in Virginia, as elsewhere, that . . . the duty of good faith does not prevent a party from exercising its explicit contractual *rights* . . . ." (emphasis in original)); *Riggs Nat'l Bank of Wash., D.C. v. Linch*, 36 F.3d 370, 373 (4th Cir. 1994) ("An implied duty of good faith cannot be used to override or modify explicit contractual terms."); *Wilkins v. United States*, 2016 WL 2689042, at *4 (E.D. Va. May 9, 2016) (dismissing implied covenant claim where the defendant "had the contractual right . . . to engage in the actions alleged in the Complaint"); *Bennett v. Bank of Am., N.A.*, 2012 WL 1354546, at *11 (E.D. Va. Apr. 18, 2012) (dismissing implied covenant claim where the defendant bank exercised its contractual rights and it was not plausibly alleged that the bank "exercise[d] its contractual *discretion* in bad faith" (alteration and emphasis in original)); *Albayero v. Wells Fargo Bank, N.A.*, 2011 WL 4748341, at *6 (E.D. Va. Oct. 5, 2011) (dismissing implied covenant claim where "the actions taken by Defendants merely amounted to an exercise of their contractual rights").

---

[2] In the cases Plaintiff relies upon, the breach of implied covenant claims survived motions to dismiss because the banks exercised their contractual discretion to post debit items in any order to maximize the accrual of their right to charge overdraft fees. *See, e.g., Gutierrez*, 622 F. Supp. 2d at 954; *In re HSBC Bank*, 1 F. Supp. 3d at 51–52.

11

### D. The Complaint Fails to State a Claim Under the North Carolina Unfair and Deceptive Trade Practices Act.

Finally, Plaintiffs' North Carolina Unfair and Deceptive Trade Practices Act ("NC UDTPA") claim must be dismissed pursuant to the contract's choice-of-law provision.

The contract specifies that "Navy Federal accounts are maintained and governed in accordance with federal law and the laws of the Commonwealth of Virginia, as amended." Important Disclosures at 7. The language of this provision, which is included in a separate "Governing Laws" section, is sufficiently broad to preclude Plaintiff's NC UDTPA claim because the claim (a) concerns how Navy Federal "maintain[s]" Plaintiff's "accounts" and interprets the account agreement, and (b) asserts identical allegations to Plaintiff's breach of contract claims. *Run Them Sweet, LLC v. CPA Glob. Ltd.*, 224 F. Supp. 3d 462, 465–69 (E.D. Va. 2016) (Ellis, J.); *Freedman v. Am. Online, Inc.*, 325 F. Supp. 2d 638, 653–54 (E.D. Va. 2004) (Ellis, J.); *see also Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 628 (4th Cir. 1999) ("Where a choice of law clause in the contract is sufficiently broad to encompass contract-related tort claims," courts should apply the clause as such.).

Plaintiff has also failed to show that enforcing the choice-of-law provision in this case "would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state." *Projects Mgmt. Co. v. DynCorp Int'l, LLC*, 2014 U.S. Dist. LEXIS 41411, at *13 (E.D. Va. March 26, 2014) (quoting Restatement (Second) of Conflict of Laws § 187(2) (1971)). Although North Carolina's UDTPA permits claims against credit unions while Virginia's analogue statute does not, "the enforcement of a choice-of-law provision that would apply a narrower consumer protection or deceptive trade practices statute does not amount to a violation of a fundamental public policy of another, more interested jurisdiction." *Canon U.S.A., Inc. v. Cavin's Bus. Sols., Inc.*, 208 F. Supp. 3d 494, 505 (E.D.N.Y. 2016) (dismissing NC

UDTPA claim pursuant to a choice-of-law provision); *see also, Run Them Sweet*, 224 F. Supp. 3d at 469 (dismissing a claim brought under California's unfair and deceptive trade practices statute pursuant to a Virginia choice-of-law provision because "there is no indication" that doing so "violates California public policy"). North Carolina's UDTPA also does not have an anti-waiver provision that would indicate dismissing a NC UDTPA claim pursuant to a choice-of-law provision would violate North Carolina's policy. *G.P.P., Inc. v. Guardian Prot. Prods., Inc.*, 2015 WL 3992878, at *18 (E.D. Cal. June 30, 2015) (dismissing a NC UDTPA claim pursuant to a choice-of-law provision because the parties did not "identify a choice-of-law exclusion or waiver provision in the statute"); *see also Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 608–09 (4th Cir. 2004) (noting that a fundamental policy analysis generally focuses on whether there is an anti-waiver provision in the statute or other statutory language suggesting the legislature intended the statute to embody fundamental policy, and finding that a choice-of-law provision barred a state law claim brought under a statute that had neither). To the contrary, the North Carolina Supreme Court has held that parties *can* waive their rights under North Carolina's UDTPA. *See Ussery v. Branch Banking & Trust Co.*, 368 N.C. 325, 777 S.E.2d 272, 281 (2015); *United Labs., Inc. v. Kuykendall*, 335 N.C. 183, 437 S.E.2d 374, 381 n.6 (1993). Thus, dismissing Plaintiff's NC UDPTA claim pursuant to the choice-of-law provision would not violate North Carolina's fundamental policy.

Accordingly, Plaintiff's North Carolina Unfair and Deceptive Trade Practices Act claim will be dismissed pursuant to the contract's choice-of-law provision.[3]

---

[3] In *Lloyd v. Navy Federal Credit Union*, the United States District Court for the Southern District of California found the Virginia choice-of-law provision at issue unenforceable as to the plaintiff's California consumer protection statutory claims because enforcing the provision would violate California's public policy. 2018 WL 1757609, at *5–6 (S.D. Cal. Apr. 12, 2018). The holding in *Lloyd* was based on (a) California's fundamental public policy in favor of class actions, which the California statutes permit but the Virginia statutes do not, and (b) the express anti-waiver provision in one of the California consumer protection statutes at issue, which stated that waivers are unenforceable as contrary to public policy. *Id.* at *5. Because NC's UDTPA does not have an anti-

## IV. CONCLUSION

For the reasons stated above, and for good cause shown, Defendant's Motion to Dismiss for Failure to State a Claim (Dkt. 19) is hereby **GRANTED**. Finding that amendment would be futile, Plaintiff's Complaint is hereby **DISMISSED WITH PREJUDICE**.

It is **SO ORDERED**.

August 14, 2019
Alexandria, Virginia

Liam O'Grady
United States District Judge

---

waiver provision or any statement that the ability to bring suits against a credit union is a fundamental policy of the state, *Lloyd* does not apply to this case.