**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

|  |  |
|---|---|
| RUBY LAMBERT, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 1:19-cv-00103-LO-MSN |
| v. | Hon. Liam O'Grady |
| NAVY FEDERAL CREDIT UNION, | |
| Defendant. | |

**PLAINTIFF AND CLASS COUNSEL'S RESPONSES TO
RONALD W. ERICKSON'S OBJECTION TO SETTLEMENT LETTER**

**INTRODUCTION**

Only one Settlement Class member has objected to the Settlement, Ronald W. Erickson ("Mr. Erickson"), in his 50-page Objections to Settlement Letter ("Objection" or "Obj."), the length of which itself violates the Local Rules of this Court. Dkt. 53. Mr. Erickson includes 42 haiku poems in his Objection and its substance is often incoherent and altogether incorrect. His Objection should be overruled and the Unopposed Motion for Final Approval of Class Action Settlement and the Unopposed Motion for Attorneys' Fees, Costs, and Service Award filed by Plaintiff Ruby Lambert ("Ms. Lambert") should be granted in their entirety. Dkt. 49-52. The response to the Objection ("Response") which follows focuses on the essence of Mr. Erickson's perceived problems with the Settlement, none of which have merit. Should the Court have any further questions concerning the Objection, Class Counsel will be prepared to address them at the Final Approval Hearing.

## ARGUMENT

***Certification of the Settlement Class.*** Once Mr. Erickson's arguments regarding class certification are distilled to their essence, it is clear that his objection has little to do with this Settlement or whether the Settlement Class should be certified, but, instead, concern the very existence of the class action device.

First, Mr. Erickson claims that the Settlement provision whereby the Parties agreed to certification for settlement purposes is *itself* reason to deny approval and/or certification. Obj. at 14. However, certification for settlement purposes "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 266 (E.D. Va. 2009). Where, as here, a class settlement is reached before a class is certified, the plaintiff may seek certification of a settlement-only class. *See Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 566 (E.D. Va. 2016) (certifying class for settlement purposes); *see also* Fed. R. Civ. P. 23(e). The certification of a settlement-only class requires a showing that the Rule 23 factors are satisfied. *See Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 367 (4th Cir. 2004); *In re The Mills Corp. Sec. Litig.*, 257 F.R.D. 101, 104 (E.D. Va. 2009).

Then, Mr. Erickson takes issue with the very idea of having a class representative, arguing essentially, that no person should be able to represent the interests of other people.[1] This is ironic, as he himself purports to represent the interests of others.[2] Moreover, the existence of the class

---

[1] Obj. at 14 ("No class action lawsuit listing one individual to represent other 'similarly situated' persons ought to be expanded beyond that one person's actually experience.").

[2] *See, e.g.*, Obj. at 1 ("I attempt to represent 'analogously similar' NFCU member-owners who received a Legal Notice in this class action lawsuit.").

action device whereby one or several people represent the interest of a broader class and serve as class representative is enshrined in the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 23.

Indeed, refocusing on the actual Rule 23(a) class certification elements Mr. Erickson purports to attack in the order he addressed them—commonality, typicality, numerosity, and adequacy of representation—it is clear he has no valid arguments against certification for settlement purposes. Notably, he does not contend that Rule 23(b)(3) is not satisfied.

Commonality is satisfied as this Fed. R. Civ. P. 23(a)(2) factor requires that there be "questions of law or fact common to the class." All that is needed is one common issue. *See McGlothlin v. Connors*, 142 F.R.D. 626 (W.D. Va. 1992). Here, Ms. Lambert alleges that Navy Federal's uniform policy of assessing Representment NSF Fees affected all Settlement Class Members. Common issues of fact and law therefore include the nature of the policy and whether the policy breaches Navy Federal's Account agreement. Resolution of those issues as to Ms. Lambert will resolve them for the Settlement Class as well and would rely on largely the same evidence as would be necessary to prove any other Settlement Class Member's claims. *See Solomon v. Am. Web Loan*, Civil Action No. 4:17cv145, 2020 WL 3490606, at *3 (E.D. Va. June 26, 2020) (finding commonality and predominance satisfied based on "a uniform scheme . . . which would rely on broadly applicable evidence").

Similarly, for typicality, the proposed class representative must show that she is "part of the class and possess[es] the same interest and suffer[ed] the same injury as the class members." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001). Typicality under Fed. R. Civ. P. 23(a)(3) is satisfied if the proposed class representative's claims "fairly encompass those of the entire class, even if not identical." *Fisher v. Va. Elec. & Power Co.*, 217 F.R.D. 201, 212 (E.D. Va. 2003). Here, Ms. Lambert's claims arise from Navy Federal's assessment of the same

Representment NSF Fees that Navy Federal extracted from other Settlement Class Members. Her interests and those of the Settlement Class are aligned because the Settlement will benefit her in the same way it benefits the rest of the Settlement Class.

Mr. Erickson's argument to the contrary is premised on his incorrect assertion that the class membership includes NSF Fees of $29.00, $20.00, and $10.00, and that Ms. Lambert does not allege to have been charged a fee of each value. Obj. at 14-15.[3] This is factually wrong, as claims involving the $20 and $10 fees (which are not Representment NSF Fees) are not released and are not at issue in the Action or the Settlement. Therefore, Ms. Lambert does not purport to represent the interests of those charged different amounts for different fees.[4] The central factual lynchpin of Mr. Erickson's argument is incorrect. He cannot and does not counter that Ms. Lambert's $29.00 Representment NSF Fees were typical of those charged to other Settlement Class Members, nor that her case presents common issues consistent with those faced by other members of the Settlement Class. Further, a putative class representative need not show that her experience is exactly identical to each member of the class. Instead, she need only show she satisfies typicality and commonality under Rule 23. *See e.g. Lienhart, Inc.*, 255 F.3d at 146. She does here.

Then, Mr. Erickson argues that the Settlement Class does not meet the numerosity requirement. However, his argument clearly confuses numerosity of class members with numerosity of class representatives. Obj. at 24-25. Fed. R. Civ. P. 23(a)(1) does not require

---

[3] In this section, Mr. Erickson also raises that Navy Federal is a credit union and not a bank, a fact which has no relevance to whether a class action could be pursued or whether the Settlement should receive Final Approval. A contract breach by a credit union is just as actionable as one by a bank.

[4] Mr. Erickson must be referring to Navy Federal's irrelevant $20.00 "Optional Overdraft Protective Service transaction fee" and $10.00 fees for "Money Market Savings Account excessive transactions" or "Payment of a Checking Line of Credit check that exceeds the approved credit limit" identified in the Schedule of Fees and Charges. Dkt. 1-2. Objector raises these fees again in his numerosity argument, which fails for the same reason, as does his mention of a "$1 NSF fee for ATM NSF requests," none of which are Representment NSF Fees. Obj. at 17-19.

numerous class representatives. Mr. Erickson argues numerosity of class members is not satisfied because Navy Federal is a member-owned credit union, thereby somehow excluding Navy Federal members from the Settlement. Obj. at 21, 24-25. He simply misreads the standard class definition exclusion language. Agreement at ¶44. The Settlement Class does ***not*** exclude "member-owners" of Navy Federal, meaning the Account Holders charged Represenment NSF Fees. *Id.* at ¶¶13, 26. Only "Navy Federal," "parents," and "officer and directors," Obj. at 14, are excluded to prevent the defendant and those individuals that set the challenged credit union policy from obtaining money from the Settlement. "[A]ll Settlement Class members who make a timely election to be excluded" simply refers to those that choose to opt-out, a right Mr. Erickson could have asserted if he did not want to participate in the Settlement and release any of his own claims believing Navy Federal did nothing wrong. Agreement at ¶ 44. He is the lone objector; no Settlement Class Members share his views. Because the argument is factually incorrect, numerosity is indisputably satisfied.

The final adequacy of representation prong requires the Court to find that the Class Representative and Class Counsel will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Here, Mr. Erickson offers no evidence that Ms. Lambert has any interest that conflicts with the Settlement Class, or any "interests antagonistic to the class." 2020 WL 3490606, at *2. Instead, Mr. Erickson seems to take issue, albeit incorrectly, with how the Settlement prorates the Settlement Fund, the merits of the case itself, and insists that merely because she filed suit Ms. Lambert's interests are antagonistic to those of the Settlement Class. Obj. at 20-21, 26-28. Of course, many class actions have been brought against credit unions, including Navy Federal, and no court has found that a financial institution formed as a credit union is immune from the Rule 23 device because it is member-owned. A credit union's member-owner's

interests when filing a class action are no more antagonistic to the putative class members' interests than a shareholder who brings a putative shareholder derivative class action for the benefit of other shareholders. Nor is Mr. Erickson's view of the lawsuit's merits and his contractual interpretation relevant to whether adequacy of representation exists. Ms. Lambert sought to promote improvements in Navy Federal's actions towards its members, and this Settlement should send that positive message through the revisions to the Account Agreement disclosure regarding Representment NSF Fees, along with some compensation. Mr. Erickson also fails to make any argument that should cause the Court to question Class Counsel's adequacy to represent the Settlement Class.

Thus, the proposed Settlement Class satisfies all Rule 23(a) requirements for class certification, and Mr. Erickson does not present any legitimate reasons to withhold certification of the Settlement Class for Settlement purposes. Predominance and superiority having been established in the Motion for Final Approval under Fed. R. Civ. P. 23(b)(3), without opposition, the Court should convert the provisional certification to final certification of the Settlement Class.

***Opt-out vs. Opt-in.*** Mr. Erickson next complains that he was required to opt out of the Settlement, rather than opt in to it. Obj. at 7. Fed. R. Civ. P. 23 requires that absent class members be given the opportunity to opt out of Rule 23(b)(3) settlements, "and the constitution likely does as well." Newberg on Class Actions § 9:51. *See also* Fed. R. Civ. P. 23(c)(2)(B)(v) (requiring opt-out rights). This objection "does not concern the fairness or substance of the Settlement, but rather the class action process set forth in Federal Rule of Civil Procedure 23(b)(3)" and should be rejected. *See In re OCA, Inc. Securities & Derivatives Litig.*, No. 05-2165, 2009 WL 512081, at *17 (E.D. La. Mar. 2, 2009) (rejecting identical objection).

*Waivers.* Mr. Erickson's arguments on pages 5-6 are unclear, but it seems that he contends that Ms. Lambert waived the right to be informed of Navy Federal's policies and procedures, and thus, her claims lack merit, and the case should be "dismissed by this Court's own prerogative." Obj. at 5. Mr. Erickson's arguments against the underlying merits of the case are not a proper basis for an objection. If it is true that the underlying case lacks merit, or that Ms. Erickson or any other Settlement Class member waived their right to information about Navy Federal's policies or practices (there is no basis to believe that they did), then that is further support for Ms. Lambert's position that the Settlement is an excellent recovery for the Settlement Class and should be approved.

*Settlement Website.* Mr. Erickson claims that he had no access to the court documents filed on February 9, 2021, between February 12-17, 2021. Those documents were timely posted to the website, and were filed publicly and publicly available on the Court's docket. And, Class Counsel offered to send Mr. Erickson "any other public case filings that you'd like." Obj. Appx. I. Mr. Erickson concedes that the filings were posted onto the Settlement Website and he gained access to them well in advance of the deadline to file his 50-page objection. Accordingly, there was no prejudice and this is not a proper basis for an objection.

*Payment of Settlement Administration Costs.* On page 13 of his Objection, Mr. Erickson appears to take issue with the fact that Navy Federal is paying the Settlement Administration Costs to JND, including Notice costs. Of course, Navy Federal's payment of such costs *outside* of the Settlement Fund is a *benefit* to the Settlement Class, because those costs do not reduce the Net Settlement Fund. And, to the extent that Mr. Erickson is objecting to such payment on the basis that the expenses are inflated due to inaccurate postage rates, Mr. Erickson's argument is wrong.

As explained by JND, the postage rates it used were proper and pre-approved by the USPS. *See generally* Declaration of Jennifer Keough.

Mr. Erickson has also made clear that he expects a "reward" for raising this frivolous issue, and his quest for such a "reward" was at least part of his motivation for objecting. *See, e.g.*, Obj. at 7 (explaining that he had "claimed a reward" in exchange for objecting to the cost of postage and arguing that "rewards are warranted when a citizen acts as an agent of the government"); *id.* at 10-11 (requesting a reward and asking the Court to reduce the Settlement to "assure me of a reward"). Mr. Erickson argues that "NFCU owes me a reward for saving NFCU some expense in both filing this Opposition to Settlement and regarding JDN's oversight in paying USPS proper first class postage rates." *Id.* at 10. The Objection also attaches emails from Mr. Erickson where he explicitly requested a monetary "reward." *E.g.*, App'x F ("I expect a reward from NFCU for the savings to NFCU now."). Courts reject self-interested attempts by objectors to use their objection rights for personal gain, rather than to protect the interests of other class members. *See, e.g.*, *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 334 F.R.D. 62, 64 (S.D.N.Y. 2019) (noting that "it has become obvious that some objectors seek to pervert the process by filing frivolous objections and appeals, not for the purpose of improving the settlement for the class, but of extorting personal payments . . . ."). The Court should not reward Mr. Erickson's blatant attempt to obstruct this Settlement in exchange for a "reward."

***Disposition of Residual Funds.*** In two places, Mr. Erickson appears to object to the proposed plan for distribution of residual funds, insisting that a *pro rata* distribution is inequitable, Obj. at 33, and that the residual funds should be returned to Navy Federal to assist needy Navy Federal members, *id.* at 4. These assertions, like his others, lack merit. A *pro rata* distribution is more equitable than simply dividing the fund equally among Settlement Class Members: under a

*pro rata* distribution, those who were harmed more will receive greater compensation. Courts recognize such distribution plans as equitable. *See, e.g.*, *Herrera v. Charlotte Sch. Of Law, LLC*, 818 Fed. App'x 165, 173 (4th Cir. 2020) (noting that a *pro rata* distribution is a "straightforward model[] of equitable treatment"); *In re Genworth Fin. Securities Litig.*, 210 F. Supp. 3d 837, 842-43 (E.D. Va. 2016) (approving *pro rata* distribution as fair). Mr. Erickson's assertion that a *pro rata* distribution rewards those who were "the poorest manager[s] of checking accounts" is factually unsupported and untethered from the liability issues in the litigation, which concern Navy Federal's conduct, not that of its members. Amongst those saddled with Representment NSF Fees, those who were harmed less equitably should receive less.

As for the contention that the funds should be returned to Navy Federal, where, as here, the *cy pres* beneficiary is aligned with the interests of the Settlement Class Members, distribution is "the next best distribution" to giving the funds directly to the Settlement Class Members. *See Brown v. Jonathan Neil & Assocs., Inc.*, No. 1:17-cv-00675-SAB, 2019 WL 636842, at *7 (E.D. Cal. Feb. 14, 2019). The parties will propose a *cy pres* that works for financial literacy, including for member of the military or veterans, Agreement at ¶ 83.b., which comports with the requirements for a proper *cy pres*. *See, e.g.*, *Krakauer v. Dish Network, LLC*, No. 1:14-CV-333, 2020 WL 6292991, at *3 (M.D.N.C. Oct. 27, 2020) (noting that a *cy pres* should "address the objectives of the underlying statutes, target the plaintiff class, and provide reasonable certainty that class members will benefit").

***Attorneys' Fees to Class Counsel.*** Mr. Erickson, while acknowledging that Class Counsel "has added value to the clarity of disclosures of Navy Federal to its member-owners, and some level of fee award is justified for that labor," argues that Class Counsel should receive 25% of the common fund rather than one-third. *See* Objection at 35. Mr. Erickson's argument appears

premised on the fact that (1) the case was settled rather than "successfully litigated"; and (2) citing cases from the Ninth Circuit, Mr. Erickson references that Circuit's 25% "benchmark" in common fund cases.

With respect to Mr. Erickson's first point, Class Counsel ought to be lauded, not penalized, for successfully negotiating an early settlement that provides significant class-wide benefits.[5] It is to no one's benefit—not to the Parties', and not to the judicial system's—to protract litigation any longer than necessary. The perverse incentive to prolong litigation in the hopes of a larger fee is, in fact, a common criticism of using the lodestar method to award fees in class actions. Applying the percentage-of-the-fund method aligns Class Counsel's interests with the Settlement Class's interests and "provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 121 (2d Cir. 2005); *see also DeWitt v. Darlington Cty., S.C.,* No. 4:11-CV-00740-RBH, 2013 WL 6408371, at *6 (D.S.C. Dec. 6, 2013) (noting many courts' preference for the percentage of the fund approach because it "better aligns the interests of class counsel and class members . . . by tying the attorneys' award to the overall result achieved rather than the hours expended by the attorneys.") (quoting *Kay Co. v. Equitable Prod. Co.,* 749 F.Supp.2d 455, 461 (S.D. W. Va. 2010). For that reason, courts in this circuit frequently award a percentage of the common fund, without a lodestar cross-check. *See e.g., Montague v. Dixie Nat'l Life Ins. Co.,* No. CIV.A. 3:09-00687, 2011 WL 3626541, at *3-4 (D.S.C. Aug. 17, 2011) (awarding one-third of class settlement without lodestar cross-check); *Temp. Servs., Inc. v. Am. Int'l Grp., Inc.,* No. 3:08-CV-00271-JFA, 2012 WL 4061537, at *8-9 (D.S.C. Sept. 14, 2012) (same).

---

[5] Mr. Erickson states that "there was no motion for certification present[ed] to the court[.]" Obj. at 35. However, the motion for preliminary approval asked the Court to provisionally certify the Settlement Class for Settlement purposes.

With respect to Mr. Erickson's second point, this Circuit does not follow the Ninth Circuit's benchmark. Instead, courts in this circuit frequently award one-third of the settlement fund. *See, e.g., Liggio v. Apple Federal Credit Union,* No. 1:18-cv-01059-LO-MSN (E.D. Va.) (J. O'Grady) (awarding one third of common fund in bank fee case); *see also In re Celebrex (Celecoxib) Antitrust Litig.*, No. 2:14-CV-00361, 2018 WL 2382091, at *5 (E.D. Va. Apr. 18, 2018) ("Fee awards of one-third of the settlement amount are commonly awarded in cases analogous to this one . . . ."); *Kelly v. The Johns Hopkins Univ.*, No. 1:16-cv-2835-GLR, 2020 WL 434473, at *3 (D. Md. January 28, 2020) ("Contingent fees of up to one-third are common in [the 4th] circuit."). This Court should do the same.

After agreeing fees should be awarded to Class Counsel, Mr. Erickson also doubts the "value" of the Settlement to Navy Federal's members. Obj. at 35, 37. Unusually, Mr. Erickson's criticizes the "value" of the Settlement because the Settlement is *too* beneficial to Settlement Class Members, supposedly at the expense of the credit union's other members. Contrary to Mr. Erickson's argument, the Settlement is not a "waste of NFCU money," *id.* at 37, but a reasonable approximation of risk on the part of the credit union and its attorneys.

Finally, Mr. Erickson again takes issue with the Settlement because it "reward[s] those with NSF fees more than NFCU members with none," Obj. at 38, which is really unrelated to the attorneys' fee issue. Of course, the Settlement Fund is allocated only to members who were charged Representment NSF Fees because those are the members that Navy Federal's challenged practice harmed and who belong in the Settlement Class.

In sum, the Settlement is fair and reasonable and provides significant benefits to Settlement Class Members. Class Counsel should be fairly compensated for achieving a significant result

11

despite considerable risk and the attorneys' fee requested clearly comports with this Circuit's calculation of a fair and reasonable award.

*Service Award.* Mr. Erickson also appears to challenge the requested Service Award to Ms. Lambert, attacking her personal financial decisions with no factual basis. *See*, *e.g.*, Obj. at 42-43. Of course, the focus of this litigation is Navy Federal's alleged breach of contract. Ms. Lambert's decision to put her finances at issue (which put her at risk of personal attacks like Mr. Erickson's), in order to obtain relief for millions of consumers should be commended, especially when she persisted to appeal the Court's dismissal of her Complaint which ultimately allowed for the Settlement. Mr. Erickson also lambasts Ms. Lambert based on his supposition that she did not complain to Navy Federal before filing suit via phone call or by "bring[ing] the issue before NFCU's annual membership meeting." *Id*. But no such prerequisite to filing suit existed, and Ms. Lambert's decision to bring suit will, with the Court's Final Approval, result in millions of dollars in the collective pockets of Settlement Class Members as well as clarity in Navy Federal's Representment NSF Fees practice by virtue of the disclosure changes to which Navy Federal agreed. Agreement at ¶52. The requested Service Award to Ms. Lambert is entirely reasonable and, in fact, *lower* than awards often permitted in this District. *See e.g., Ryals v. HireRight Sols., Inc.*, No. 3:09cv625, Dkt. No. 127 at 10 (E.D. Va. Dec. 22, 2011) (Judge Gibney approving a service award to each class representative in the amount of $10,000); *Manuel v. Wells Fargo Bank, Nat'l Ass'n*, No. 3:14CV238(DJN), 2016 WL 1070819, at *6 (E.D. Va. Mar. 15, 2016) (Magistrate Judge Novak approving a $10,000 service award). Indeed, Mr. Erickson's baseless attacks on Ms. Lambert appear to be aimed at one thing – a thinly veiled attempt to justify a payout to Mr. Erickson. Obj. at 44-45.

*Legal Ethics.* Mr. Erickson further accuses Class Counsel of unethical conduct—a serious accusation—with zero basis in fact. Mr. Erickson's hypothesis that Class Counsel failed to inform Ms. Lambert of key information—which Mr. Erickson identifies as the fact that Ms. Lambert is a member of Navy Federal rather than a "typical customer"—is pure conjecture. Furthermore, there is no basis for Mr. Erickson's contention that Class Counsel unethically "scout[ed]" or solicited Ms. Lambert in this matter. Mr. Erickson appears to have a broader frustration with attorney advertising, *see* Obj. at 47, but it does not follow that Class Counsel acted unethically in any way. The fact that he is the sole objector and so few Settlement Class members opted out of the Settlement speaks volumes.

*National Credit Union Administration.* Finally, Mr. Erickson complains that the National Credit Union Administration, NCUA, is not a party to the litigation and that the Settlement did not result in a change to NCUA's rules. Obj. 47-48. Of course, NCUA is not a required party under Fed. R. Civ. P. 19, nor would it be a proper or interested party. Ms. Lambert properly directed her Complaint at Navy Federal for charging and collecting the challenged Representment NSF Fees, and that Complaint has resulted in, *inter alia*, important changes to Navy Federal's disclosures to its members. Mr. Erickson's objection is meritless and should be rejected in full.

## CONCLUSION

Having failed to offer any objection that should cause the Court to consider denying Final Approval of the Settlement, Class Counsel's requests for attorneys' fees and costs, or the Service Award for Ms. Lambert as the Class Representative, Mr. Erickson's Objection should be overruled in its entirety.

Dated: March 11, 2021

/s/      *Kristi C. Kelly*

Kristi C. Kelly, VSB No. 72791
Andrew J. Guzzo, VSB No. 82170
Casey S. Nash, VSB No. 84261
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167
kkelly@kellyguzzo.com
aguzzo@kellyguzzo.com
casey@kellyguzzo.com

Jeff Ostrow (pro hac vice)
Jonathan M. Streisfeld (pro hac vice)
KOPELOWITZ OSTROW
FERGUSION
WEISELBERG GILBERT
One W. Las Olas Blvd.
Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954)525-4300
ostrow@kolawyers.com
streisfeld@kolawyers.com

*Attorneys for Plaintiff and the Settlement*
*Class*

Jeffrey D. Kaliel (pro hac vice)
Sophia G. Gold (pro hac vice)
KALIEL PLLC
1875 Connecticut Ave., NW
10th Floor
Washington, DC 20009
(202) 350-7483
jkaliel@kalielpllc.om
sgold@kalielpllc.om

Hassan A. Zavareei (pro hac vice)
Andrea R. Gold (pro hac vice)
Katherine M. Aizpuru (pro hac vice)
TYCKO & ZAVAREEI LLP
1828 L Street NW, Suite 1000
Washington DC, 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
hzavareei@tzlegal.com
agold@tzlegal.com
kaizpuru@tzlegal.com

14

15